[No. 14749-1-II.   Division Two.   August 19, 1993.]

SHARI M. CAOUETTE, *Appellant,* v. AUGUSTINE MARTINEZ,
ET AL, *Respondents.*

*John E. Combs,* for appellant.

*Bertil F. Johnson* and *Davies Pearson, P.C.,* for respondents.

ALEXANDER, C.J. — Shari M. Caouette appeals an order of the Kitsap County Superior Court vacating an order of default and judgment. She contends the trial court erred in concluding that: (1) it lacked jurisdiction to enter the order of default and judgment; and (2) there were independent grounds for vacating the default order and judgment. We reverse and remand for further proceedings.

On June 8, 1986, Shari Caouette was a passenger in an automobile that was struck by a pickup driven by Augustine Martinez.[1] On May 24, 1989, Caouette commenced suit in Kitsap County Superior Court against Augustine Martinez and his spouse, alleging that Augustine Martinez had negligently caused the collision and her resulting injuries. Two weeks later she amended her complaint to add Angelico

---

[1] At the time of the accident, Shari Caouette's name was Shari Caldwell. At the time the notice of appeal was filed her name was Shari Caouette and we have referred to her as such throughout this opinion.

Martinez and his wife as defendants, claiming that Angelico was the brother of Augustine Martinez and the owner of the pickup truck driven by Augustine Martinez. She sought a judgment against them on a theory of negligent entrustment.

Caouette hired two process servers to serve the Martinezes. They were unable to locate any of the defendants, despite postal traces, telephone directory searches, and personal inquiries at the defendants' last known addresses in Pierce and Kitsap Counties. The process servers each filed affidavits stating that Angelico Martinez, Augustine Martinez, and their respective spouses could not be found despite "due inquiry" and "diligent search".

On August 3, 1989, Caouette's counsel mailed a letter to the Farmers Insurance Group, believing that the pickup truck driven by Augustine Martinez was insured by that company. He advised Farmers in that letter that his client had filed suit against the Martinezes, was unable to serve them, and thus intended to serve them by publication. On August 11, 1989, Caouette obtained an order from the Kitsap County Superior Court authorizing her to serve all of the defendants by publication. Caouette transmitted that order and the summons to a weekly newspaper in Kitsap County, requesting that the summons be published. The newspaper mistakenly published the order rather than the summons. As a result, the summons was not published until December 20, 1989. The Martinezes failed to appear following that publication and an order of default was entered against them on April 20, 1990.

On October 9, 1990, Caouette presented the Superior Court with an "Affidavit of Plaintiff in Support of Money Judgment" in which she stated that the vehicle that struck her was owned by Angelico Martinez and was driven by his brother, Augustine Martinez. On that same day, the trial court entered a judgment against the Martinezes for $50,932.18, together with attorney fees and costs.

On November 16, 1990, the Martinezes filed a motion and affidavit for an order to show cause why the trial court

should not: (1) dismiss Caouette's complaint for lack of personal jurisdiction; or (2) vacate and set aside the order of default, as well as the findings, conclusions, and judgment. The affidavit stated, in pertinent part, as follows:

> Plaintiff failed to obtain service of the summons on any of the defendants by publication or otherwise and the court lacked personal jurisdiction to sign the order of default on April 20, 1990, and the money judgment on October 9, 1990.
>
> . . . .
>
> Furthermore, the pleadings filed herein do not support a theory of "negligent entrustment" or "family car" to implicate the named insured, Angelico Martinez . . .[.]

Caouette filed an affidavit in opposition, alleging that she had contacted Augustine Martinez shortly after the accident at the address he had given to a Bremerton police officer at the scene of the accident. She alleged that she met Angelico Martinez at that address, and that he stated that he was the brother of Augustine Martinez. Caouette claimed also that the two men were rude to her and that, as a consequence, she left. According to Caouette, her subsequent efforts to locate the two men were fruitless. Caouette also alleged that her lawyer subsequently learned that the truck driven by Augustine Martinez was covered by a liability policy issued by the Farmers Insurance Group.

Following a hearing on the Martinezes' motion, the trial court found that Caouette's counsel had sent a letter to Farmers informing the company of the suit, but that it was never received by Farmers due to "mistake", "excusable neglect", or "surprise". It also held that: the Martinezes "were 'concealing' themselves, as the term is used in RCW 4.16.180, following the automobile accident"; the "publication of the 'Order to Serve Amended Summons by Publication' did not give sufficient notice" to the Martinezes; and that the statute of limitations was not tolled during the period they concealed themselves because the Martinezes were amenable to service by publication. Concluding that the statute of limitations had run, the trial court vacated the default order and judgment and dismissed Caouette's claims with prejudice. The trial court also determined that there

were independent grounds to vacate the default judgment pursuant to CR 60(b)(1), (11) and RCW 4.28.200.

I

STATUTE OF LIMITATIONS

The statute of limitations on personal injury actions is 3 years. RCW 4.16.080(2). Consequently, Caouette had 3 years from the date of the accident, June 8, 1986, to commence her action against these defendants. An action is commenced by the filing of the complaint or service of the summons and complaint, provided that if the action is commenced by filing the complaint only, the defendants shall be served, personally or by publication, within 90 days of the date of the filing in order to complete commencement of the action for purposes of the statute of limitations. *See* RCW 4.16.170.

Although Caouette filed her lawsuit in Kitsap County Superior Court within 3 years from the date of the accident, she did not serve it on the defendants within 90 days of the date her lawsuit was filed, *i.e.*, within 90 days after May 24, 1989. This is significant because Caouette could only complete the commencement of her action by serving it, either personally or by publication, within 90 days of the date her lawsuit was filed. Because the defendants were not served within that time, her action against them is time barred, unless the statute of limitations was tolled for some reason. The principal issue before us, therefore, is whether the statute of limitations was tolled by the Martinezes' concealment of themselves. If we answer that question in the affirmative, then we must remand to the Superior Court in order to have it determine the length of time the defendants were concealed.

The pertinent statute on tolling of the statute of limitations is RCW 4.16.180. It provides:

> If the cause of action shall accrue against any person who is a nonresident of this state, or who is a resident of this state and shall be out of the state, or concealed therein, such action may be commenced within the terms herein respectively limited after the coming, or return of such person into the state, or after the end of such concealment; and *if after such cause of action shall have accrued, such person shall depart from and*

*reside out of this state, or conceal himself, the time of his absence or concealment shall not be deemed or taken as any part of the time limit for the commencement of such action.*

(Italics ours.)

Caouette asserts that under the plain language of RCW 4.16.180, the statute of limitations was tolled during the period the defendants concealed themselves. The Martinezes respond that the statute of limitations was not tolled because they were amenable to service by publication during the entire time they concealed themselves. They cite two principal cases in support of their position. In one of the cases, *Patrick v. DeYoung*, 45 Wn. App. 103, 724 P.2d 1064 (1986), *review denied*, 107 Wn.2d 1023 (1987), *overruled on other grounds in Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991), this court held that the tolling provisions of RCW 4.16.180 do not apply when a nonresident defendant may be served pursuant to Washington's nonresident motorist statute, RCW 46.64.040. Likewise, in *Summerrise v. Stephens*, 75 Wn.2d 808, 454 P.2d 224 (1969), the Supreme Court held that the tolling provisions of RCW 4.16-.180 were inapplicable when nonresident defendants were amenable to service under Washington's long-arm statute, RCW 4.28.185.

We do not believe the principles enunciated in *Patrick* and *Summerrise* apply here. In each of those cases, the defendants could not be served personally in Washington solely because they were not residents of this state. Those defendants were not intentionally concealing themselves to avoid service, and they were amenable to personal service in the states in which they were residing. Here, the situation is substantially different. The trial court found and concluded, as we have observed above, that the Martinezes were "concealing" themselves, within the meaning of RCW 4.16.180. Concealment under that statute is defined as a "clandestine or secret removal from a known address". *Patrick*, 45 Wn. App. at 109 (citing *Bethel v. Sturmer*, 3 Wn. App. 862, 867, 479 P.2d 131 (1970)).

■ ■ While it is true that these defendants could be served by publication of summons pursuant to the provision of RCW 4.28.100, such service is constructive only and is not, as a practical matter, an effective means of notifying a party of the pendency of a lawsuit. Furthermore, if the statute of limitations is not tolled during the period of time a defendant is concealed because service could be had on him or her by publication, persons who intentionally conceal themselves to avoid service may be rewarded. We reach that conclusion because there is a greater possibility that a judgment will be set aside when the judgment is based upon service by publication than there is if the judgment is based on personal service. That is so because RCW 4.28.200 gives persons who are constructively served the right to apply to reopen and defend. The statute provides:

> If the summons is not served personally on the defendant in the cases provided in RCW 4.28.110 and 4.28.180, he or his representatives, on application and sufficient cause shown, at any time before judgment, shall be allowed to defend the action and, except in an action for divorce, the defendant or his representative may in like manner be allowed to defend after judgment, and within one year after the rendition of such judgment, on such terms as may be just; and if the defense is successful, and the judgment, or any part thereof, has been collected or otherwise enforced, such restitution may thereupon be compelled as the court directs.

Our Supreme Court long ago concluded, in *Chaney v. Chaney*, 56 Wash. 145, 105 P. 229 (1909), that defendants have "additional rights" under Rem. Rev. Stat. § 235 (the predecessor of RCW 4.28.200), if the default judgment against them was based upon service by publication. The court held:

> It will be noticed that this section relates only to judgments and decrees rendered upon service by publication, its purpose evidently being to give to parties having judgments and decrees rendered against them upon such service, other than in divorce cases, an opportunity to appear and defend at any time within one year thereafter, when they can show any sufficient cause within the discretion of the court rendering such judgment or decree.

*Chaney*, 56 Wash. at 150-51. As one commentator has more recently noted:

> In authorizing a defendant to defend on a showing of "sufficient cause," the evident intent is to provide the trial court in such instances with a greater discretion in granting a vacation than in the case of personal service of process.

Trautman, *Vacation and Correction of Judgments in Washington*, 35 Wash. L. Rev. 505, 527 (1960).

A holding by this court that the tolling provisions of RCW 4.16.180 are not applicable, despite concealment by these defendants, would contravene the clear public policy favoring personal service over constructive service. That policy was not inhibited by the rulings in *Summerrise* and *DeYoung* because the defendants there could be personally served, albeit in another state. We hold, therefore, that the statute of limitations is tolled for the period that the Martinezes concealed themselves, notwithstanding that they may have been amenable to service by publication during the 3 years 90 days following the accident. We therefore remand to the Superior Court for a determination of the length of time these defendants concealed themselves to avoid personal service.

## II
### INDEPENDENT GROUNDS TO VACATE

The trial court also concluded that the default order and default judgment should be set aside and vacated on "independent grounds". It is necessary for us to review that determination because that ruling has an effect on the validity of the default judgment if the trial court determines, following remand, that the defendants were properly served by the publication of summons.

In concluding that the default order and judgment should be vacated, the trial court relied primarily upon CR 60(b). That rule provides in part that the court may relieve a party from a final judgment for:

> (1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
> . . . .

(11) Any other reason justifying relief from the operation of the judgment.

The grounds that the trial court gave for vacating the default judgment under CR 60(b) were as follows:

(a) If Rob Cook or Gary Peterson of Farmers Insurance did not receive the letter from John Combs it was a mistake or excusable neglect on the part of mail personnel to not forward it to them or if Farmers never received the letter, notice of the judgment was a surprise;

(b) The court makes no finding as to ethical or legal impropriety, however, from an equitable standpoint, it would have been appropriate for plaintiff to have given representatives from Farmers notice before entering the default judgment;

(c) Since there is no factual basis upon which to conclude Angelico Martinez owned the involved automobile and/or determine the relationship of he and Augustine Martinez, the default judgment is inequitable;

We review a trial court's decision to vacate a judgment under CR 60(b) for abuse of discretion. *Kennedy v. Sundown Speed Marine, Inc.*, 97 Wn.2d 544, 548, 647 P.2d 30, *cert. denied sub nom. Volvo Penta of Am. v. Kennedy*, 459 U.S. 1037, 74 L. Ed. 2d 603, 103 S. Ct. 449 (1982). Moreover, default judgments are not favored in the law, thus a trial court's vacation of a default judgment is less likely to constitute abuse of discretion. *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 582, 599 P.2d 1289 (1979). Additionally, as we have noted above, a trial court has greater discretion to grant vacation of a default judgment when it is based on service by publication. RCW 4.28.200; *Chaney*.

One of the trial court's reasons for vacating the default judgment was that representatives of Farmers Insurance did not receive notice of the fact that Caouette was moving to obtain a default judgment. That conclusion was based, in part, on the affidavit of Farmers' claims representative Robert W. Cook, who indicated that Farmers received no correspondence from plaintiff between May 16, 1988, and October 9, 1990. The trial court also relied on the declaration of Gary F. Peterson, an "attorney negotiation specialist" employed by Farmers, who claimed that he made several attempts to contact plaintiff's attorney from September 14,

1988, to March 10, 1989. Cook and Peterson both claimed that they were surprised by the default judgment because they did not know that a suit had been filed.

■ We do not believe that a plaintiff's failure to notify a nonparty insurer of her intention to obtain a default judgment against an insured is a basis for vacation of a default order and judgment. Martinez has cited no authority, and our research has revealed none, that stands for the proposition that it is inequitable to enter a default judgment against a defaulting party without first notifying that party's insurer.

The trial court's other independent ground for vacating the default judgment was that it was inequitable to enter a judgment against the defendants because there was no factual basis upon which the trial court could have determined the relationship between Augustine and Angelico Martinez or who owned the vehicle that struck Caouette. We believe that was a proper basis for vacating the default judgment against Angelico Martinez.

■ As previously noted, a trial court may relieve a party from a final judgment for "[a]ny other reason justifying relief from the operation of the judgment." CR 60(b)(11). In our judgment, that portion of the rule supports vacation of a default order and judgment that is based upon incomplete, incorrect or conclusory factual information. *See, e.g., State v. Scott*, 92 Wn.2d 209, 595 P.2d 549 (1979).

Here, Caouette sought a judgment against Angelico Martinez on a theory of negligent entrustment. In order to prevail on such a theory, the plaintiff must show that a person entrusting a vehicle to another knew, or should have known in the exercise of ordinary care, that the person to whom the vehicle was entrusted is reckless, heedless, or incompetent. *Mejia v. Erwin*, 45 Wn. App. 700, 704, 726 P.2d 1032 (1986) (citing *Cameron v. Downs*, 32 Wn. App. 875, 650 P.2d 260 (1982)). Nowhere in the materials that Caouette submitted in support of her judgment did she set forth facts that would support a finding that Angelico Martinez negligently entrusted the pickup truck to Augustine Martinez. In short,

the trial court simply had no evidence to support a finding of negligent entrustment. It follows, therefore, that a judgment against Angelico Martinez was not justified. While Caouette asserts that she can rely on the unanswered allegations of negligent entrustment that were set forth in her complaint, we disagree. The complaint indicated simply that Caouette was struck by a pickup truck, which was:

> operated by defendant AUGUSTINE MARTINEZ, and which was negligently entrusted and provided to him and owned by, or co-owned with Defendant ANGELICO MARTINEZ, who is believed to be the brother of Defendant AUGUSTINE MARTINEZ.

It would be inequitable to allow the judgment to stand on a mere allegation that there was negligent entrustment of the pickup truck, particularly where, as here, the plaintiff submitted an affidavit in support of the judgment that failed to support the allegation in the complaint. We conclude, therefore, that the trial court did not abuse its considerable discretion in holding that there was an independent ground for vacating the default order and judgment against Angelico Martinez.

## CONCLUSION

We reverse the Superior Court's determination that the statute of limitations was not tolled during the period the defendants concealed themselves, and we remand for a hearing so that the trial court may enter findings as to the duration of the concealment and determine whether the statute of limitations had run on Caouette's claim in light of the duration of the concealment. We affirm the trial court insofar as it determined that the default judgment against Angelico Martinez should be vacated on independent grounds.

MORGAN, J., and PETRIE, J. Pro Tem., concur.