[No. 62374-5-I.   Division One.   December 28, 2009.]

AECON BUILDINGS, INC., *Respondent*, v. VANDERMOLEN CONSTRUCTION COMPANY, INC., ET AL., *Defendants*, GLEN A. CASEBEER, *Appellant*.

734

*Charles K. Wiggins* (of *Wiggins & Masters PLLC*) and *David J. Bierman* (of *Alexander & Bierman PS*), for appellant.

*Richard L. Martens* and *Steven A. Stolle* (of *Martens & Associates*), for respondent.

¶1 APPELWICK, J. — Aecon, a general contractor, took a default judgment against subcontractor Casebeer and his company, Chinook, when they failed to appear in a construction defect lawsuit. Chinook's insurer, Hartford, moved to vacate the default order on the equitable ground that Aecon failed to notify Hartford when it filed suit and served Casebeer. Hartford appeared and contested the

motion for default judgment. The trial court denied Hartford's motion to vacate the default and entered judgment after taking evidence. We affirm.

## FACTS

¶2 Aecon Buildings Inc. served as general contractor for the construction of the Quinault Beach Resort and Casino for the Quinault Indian Nation. Aecon subcontracted with Glen A. Casebeer and Chinook Builders Inc.[1] to do the framing on the project. After completion of the resort, the Quinault Indian Nation alleged claims against Aecon for construction defects that caused water intrusion and other property damage. Aecon and the Quinault Indian Nation initiated arbitration, as required by their contract. Aecon tendered claims to several subcontractors whose work was implicated in the alleged defects. In January 2005, Aecon filed a lawsuit against these subcontractors, alleging that their defective performance under the subcontract caused the damage claimed by the Quinault Indian Nation. The original filing did not include Chinook as a defendant. On May 3, 2006, Aecon tendered the defense of the claim to Chinook. Chinook's insurance broker received a copy of the request for defense. The broker forwarded the tender to Chinook's insurer, Hartford Casualty Insurance Company. The letter advised Chinook of the construction defect claims and tendered defense of the claims to Chinook. The letter made no mention of the lawsuit in which Chinook had not yet been named.

¶3 After receiving the forwarded letter from Chinook's broker, Pete Harris, a claims adjuster from Hartford, tried without success to contact Casebeer and Chinook for information relating to the tender of defense. Harris also contacted Aecon for additional information. According to Harris's declaration, Aecon's representative did not inform

---

[1] There is conflicting information about whether this is a sole proprietorship or a corporation. For the purpose of this opinion, "Chinook" refers to the business and "Casebeer" refers to the individual.

Hartford of any lawsuit including Chinook as a defendant. Aecon sent requested documents to Hartford. Aecon filed and served its amended complaint—adding Chinook and other new defendants—in June 2006. Hartford was not informed of Chinook's inclusion as a defendant in the suit. Hartford sent a denial of defense letter to Aecon in November 2006 and Chinook in December 2006.

¶4 Casebeer received proper service of the summons and complaint for the lawsuit against Chinook on June 15, 2006. Hartford received no notification of the suit from Casebeer, its insured. Chinook failed to respond to the complaint. In September 2006, the trial court entered an order of default against Chinook.

¶5 In 2007, Aecon sued Hartford, and several other insurers, claiming bad faith. The case was removed to federal court. *See Aecon Bldgs., Inc. v. Zurich N. Am.*, 572 F. Supp. 2d 1227 (W.D. Wash. 2008).

¶6 Aecon settled with the Quinault Indian Nation for $3.75 million. In July 2007, Aecon filed a motion asking for a determination of reasonableness of the settlement under RCW 4.22.060. Hartford's counsel in the coverage claim suit received service of the motion for a reasonableness hearing. According to Hartford, this was the first notice of Chinook's inclusion in the lawsuit. Hartford[2] immediately moved to set aside the order of default. The trial court denied the request.

¶7 With the exception of Chinook, Aecon settled with the subcontractors included in the lawsuit for a total of $2,412,500. Aecon moved for default judgment against Chinook for the remaining amount owed in the Quinault Indian Nation settlement plus attorney fees and costs incurred during all of the litigation with the Quinault Indian Nation and the subcontractors. This amounted to over $2.4 million. The trial court denied this motion for

---

[2] Casebeer, and therefore Chinook, have never been located and have never responded in this suit. Chinook's representation has been undertaken by Hartford, presumably without notice to or approval by Casebeer and Chinook.

default judgment, because damages and the attorney fees costs had not been allocated based on Chinook's breach of contract.

¶8 Aecon filed a second motion for default judgment against Chinook, requesting $1,185,212 in damages as outlined by an expert witness, James Paustian. The request also included additional requests for attorney fees and costs and prejudgment interest, for a total default judgment of $1,788,651. Over Chinook's opposition, the trial court granted judgment on the damages but deferred the motion for fees and costs pending a calculation based on the lodestar method.

¶9 Hartford, standing in the shoes of Chinook, appeals both the denial of the motion to set aside the order of default and the default judgment. After submission of the appellant's brief, Aecon moved to supplement the record on appeal with evidence not before the trial court. The supplement consisted of sworn deposition testimony of Hartford claims representative Harris, in which he states that Aecon had informed him that Chinook would likely be brought into the ongoing lawsuit. The deposition testimony was given during the federal action between Aecon and Hartford seven months after filing the motion to set aside the order of default. Chinook stipulated to the supplementation, and a commissioner granted the motion to supplement.

## DISCUSSION

### I. Motion To Vacate Entry of Default

¶10 We review a trial court's decision on a motion to vacate an order of default or default judgment for abuse of discretion. *Morin v. Burris*, 160 Wn.2d 745, 753, 161 P.3d 956 (2007); *In re Estate of Stevens*, 94 Wn. App. 20, 29, 971 P.2d 58 (1999). Discretion is abused if exercised on untenable grounds or for untenable reasons. *Morin*, 160 Wn.2d at 753. "A proceeding to vacate or set aside a default judgment is equitable in its character, and the relief sought or afforded is to be administered in accordance with equitable

principles and terms." *Id.* at 754. As a result, the trial court can vacate an order of default for good cause. CR 55(c)(1); *Seek Sys., Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 271, 818 P.2d 618 (1991). Courts consider excusable neglect and due diligence as factors in considering "good cause." *Id.*

¶11 Chinook alleges that Aecon acted inequitably by failing to notify Chinook's insurer, Hartford, about the lawsuit against Chinook. Chinook contends that this inequitable conduct provides grounds for vacating the order of default, and that the trial court erred by denying its motion to vacate. According to Chinook, Aecon failed to notify Hartford of its plans to amend the complaint and then the actual amendment of the complaint to include Chinook as a defendant. To support the theory that concealing a lawsuit constitutes inequitable behavior allowing for reversal of a default judgment, Chinook cites *Morin*, 160 Wn.2d 745.

¶12 *Morin* consolidated three cases concerning the "appearance" requirement for providing notice of default judgment proceedings. *Id.* at 753-54. In the third case, the Gutzes and the Johnsons were involved in an automobile accident. *Id.* at 758. Gutzes' counsel engaged in settlement discussions with the Johnsons' insurer. *Id.* Shortly after the statute of limitations ran, the insurer called Gutzes' counsel to discuss settlement and asked whether there would be litigation. *Id.* The Gutzes had filed suit shortly before the statute of limitations ran, but the attorney made no mention of the suit to the insurer during the conversations about settlement. *Id.* Without informing the insurer that a default judgment was pending, counsel continued to negotiate a settlement with the insurer. *Id.* at 759. The Supreme Court believed that counsel's failure to disclose may have been an inequitable attempt to conceal the litigation that would allow for the default judgment to be set aside. *Id.*

¶13 Chinook argues that Aecon's behavior toward Hartford correlates to the concealment discussed in *Morin*. But, Chinook ignores that the court also stated that "Gutzes' counsel had no duty to inform [the insurer] of the

details of the litigation." *Id.* The inequitable conduct did not arise from counsel's failure to notify the insurer of the lawsuit. Instead, the problem stemmed from the apparent attempt to conceal the existence of the suit while the parties engaged in settlement negotiations. *Id.*

¶14 Here, Aecon did not conceal the existence of the lawsuit from Hartford during ongoing negotiations. Aecon and Hartford were not attempting to settle the claims. The calls focused on gathering information in order to determine whether Hartford had a duty to defend Aecon for the construction defects alleged by the Quinault Indian Nation, either through the indemnity provisions of the subcontract or as an additional insured on the policy. At the time of the telephone calls, Aecon had not yet named Chinook in the suit. Aecon could not conceal a lawsuit that did not yet exist. Therefore, Aecon did not act inequitably by failing to disclose a suit it had yet to file against Chinook.

¶15 This case is more akin to the scenario in *Caouette v. Martinez*, 71 Wn. App. 69, 856 P.2d 725 (1993). In *Caouette*, a trial court vacated a default judgment because the defendants' insurer did not receive notice of the motion to obtain a default judgment. *Id.* at 77. Division Two determined that no case law supported the proposition that it is inequitable to enter a default judgment without notifying the insurer. *Id.* at 78. It stated, "We do not believe that a plaintiff's failure to notify a nonparty insurer of her intention to obtain a default judgment against an insured is a basis for vacation of a default order and judgment." *Id.* Hartford is Chinook's insurer, but not a named party in the lawsuit. Aecon does not appear to have concealed the litigation but merely failed to notify Hartford.

¶16 Chinook points to the deposition testimony of claims adjuster Harris in the supplemental evidence to demonstrate that Aecon had agreed to notify Hartford of any filing against Chinook. In his deposition, Harris stated that Aecon's representative "said that she was going to serve the insured and that that was a couple of weeks out, and I would be getting a copy of that. But I don't believe I ever got

it." According to Chinook, Hartford relied on the representation that Aecon would forward the pleadings after Chinook became part of the suit and that failure to comply with this promise was inequitable.

¶17 But, *Morin* requires more than just inequitable conduct on the part of the party filing for default judgment. *Morin* states that "[i]f the Johnsons' representative acted with diligence, and the failure to appear was induced by Gutzes' counsel's efforts to conceal the existence of litigation . . . , then the Johnsons' failure to appear was excusable under equity and CR 60." 160 Wn.2d at 759. The Johnsons' counsel had to have "acted with diligence." *Id.* Here, Harris testified that Aecon's representative said that the suit would be filed soon and pleadings would be sent. But, when those pleadings never arrived, Harris failed to make any inquiries into the status of the lawsuit. He did not act with the diligence necessary for relief under equity or CR 60.

¶18 The trial court did not abuse its discretion by denying the motion to vacate the order of default. Even the additional evidence before this court on appeal does not reveal inequitable conduct requiring vacation of the default.

II. <u>Findings of Fact and Conclusions of Law under CR 55(b)(2)</u>

¶19 Under CR 55(b)(2), upon entry of default judgment when the amount of damages is uncertain, a trial court must enter findings of fact and conclusions of law to support the judgment. It states, "If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages . . . , the court may conduct such hearings as are deemed necessary . . . . Findings of fact and conclusions of law are required under this subsection." CR 55(b)(2). Chinook alleges error, because the trial court did not enter findings of fact and conclusions of law.

¶20 Findings of fact and conclusions of law are generally required so that an appellate court can evaluate the factual

and legal basis for the trial court's decision in default cases. *Little v. King*, 160 Wn.2d 696, 706, 161 P.3d 345 (2007). In *Little*, the court determined that the lack of findings and conclusions was not fatal to the judgment. *Id.* at 707. The judge in the case had listed the materials examined and the specific amounts awarded for the different types of damages. *Id.* The court agreed that the entry of judgment " 'necessarily implies a finding of fact that Little suffered damages in the given amounts and the conclusion of law that Little was entitled to recover those sums from King.' " *Id.* (quoting *Little v. King*, noted at 127 Wn. App. 1021, 2005 WL 1090134, at *6, 2005 Wash. App. LEXIS 977, at *18, *aff'd*, 160 Wn.2d 696, 161 P.3d 345 (2007)).

¶21 Despite Chinook's claims to the contrary, this case is similar to *Little*. The trial court entered judgment for the exact amount claimed as damages and supported by expert evidence. This implies that the court accepted the expert's allocation of damages and rejected Chinook's theories against the recovery. The trial court may have erred by failing to enter findings and conclusions as required by CR 55(b)(2), but the lack of findings and conclusions does not hinder our review of this case. We see no need to remand solely for their entry.

III. Judgment

■ ■ ¶22 After entering an order of default, the court must make a reasonable inquiry to determine the amount of damages. *Smith v. Behr Process Corp.*, 113 Wn. App. 306, 333, 54 P.3d 665 (2002). The reasonability of the damage award is a question of fact reviewed for abuse of discretion. *Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc.*, 143 Wn. App. 345, 357-58, 177 P.3d 755, *review denied*, 164 Wn.2d 1032 (2008). The trial court entered judgment for Aecon in the amount of $1,185,212 based on expert reports and depositions.

■ ¶23 The evidence presented by Aecon shows that Chinook is responsible for the deficiencies related to the exterior and interior shear walls. The cost to remediate and

repair the problems associated with the shear walls amounted to $1,124,324. The trial court implicitly accepted the expert testimony that reflects that Chinook was solely responsible for these defects.

¶24 The same expert report contends that Chinook "may be responsible or are partially responsible" for construction deficiencies including improper installation of some of the first floor windows, plywood sheathing improperly spanning gaps created by the offset module installation at the second to fourth floor shear walls, and improperly installed hold-downs. Chinook argues that the expert testimony finding only partial responsibility should not result in full responsibility for the damages relating to these defects. Examination of the expert's cost estimate allocation shows that Chinook was not allocated the full cost of remediation and repair for these defects. For example, the expert allocated Chinook only a fraction of the cost to remediate the damage related to the improperly installed windows. While the expert did not provide an explicit allocation of repairs to other responsible subcontractors, the estimated allocation to Chinook reflects only partial responsibility for some of the alleged defects.

¶25 The trial court accepted the expert's allocation of the costs to Chinook. Though Chinook was participating in this stage of the litigation, it did not supply the court with an alternative damages calculation. Chinook's expert did not prepare an allocation of damages. The evidence provided by the expert supports the damages awarded. The trial court did not abuse its discretion.

¶26 Aecon requests attorney fees under a provision of the subcontract which states, "In the event of litigation between the Subcontractor and the Contractor to enforce the rights under this subparagraph, reasonable attorneys' fees shall be allowed to the prevailing party." As the prevailing party, Aecon is entitled to receive fees on appeal.

¶27 We affirm.

DWYER, A.C.J., and BECKER, J., concur.