# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CONCRETE SERVICES, INC., a
Washington corporation,

   Plaintiff,

    v.

ROBERT KANANY, a single man,

   Appellant,

OVIDIO ESCAMILLA, a single man,

   Respondent,

FRONTIER BANK, a Washington
Bank, MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC., a
Delaware Corporation, and
PRIMELENDING, A PLAINSCAPITAL
COMPANY, a Texas Corporation,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 68578-3-I

UNPUBLISHED OPINION

FILED: May 20, 2013

DWYER, J. — Robert Kanany appeals from a trial court order denying his request for relief from a default judgment entered against him. Kanany asserts that the default judgment was satisfied by a $10,000 payment made by a title insurance company on behalf of Ovidio Escamilla in order to obtain dismissal of

claims asserted by Concrete Services, Inc. against Escamilla and to assign the default judgment in favor of Concrete Services against Kanany to Escamilla. We determine that substantial evidence supports the trial court's finding that the $10,000 payment constituted consideration for dismissal of the claims against Escamilla and assignment of the default judgment against Kanany—*not* satisfaction of that judgment. Accordingly, we affirm the trial court's denial of Kanany's request for relief. We additionally affirm the trial court's grant to Escamilla of an award of attorney fees incurred in defending against vacation of the default judgment. Finally, because we determine that Kanany's appeal is frivolous, we grant to Escamilla an award of attorney fees on appeal against both Kanany and his counsel.[1]

I

On February 18, 2009, Concrete Services filed an amended complaint seeking to collect amounts owed and to foreclose upon a lien encumbering six parcels of property owned by Kanany, who had failed to pay for the installation of concrete improvements to those properties. Without disclosing the existence of the lien, Kanany had subsequently conveyed one of the six parcels to Escamilla. Accordingly, the complaint filed by Concrete Services named both Kanany and Escamilla as defendants.[2] Concrete Services sought judgment against Kanany

_____

[1] As explained below, the award of attorney fees on appeal against Kanany is warranted pursuant to Civil Rule (CR) 11 and RCW 60.04.181—the bases for the fee award in the trial court—in addition to Rule of Appellate Procedure (RAP) 18.9(a). The appellate fee award against Kanany's counsel is warranted based solely upon RAP 18.9(a).

[2] Concrete Services also named as defendants Frontier Bank, Mortgage Electronic Registration System, Inc., and Primelending, a Plainscapital Company, each of which claimed an interest in the subject real property. Thus, Concrete Services sought judgment that the liens of

- 2 -

in the amount of $7,688.83 with interest at a rate of 12 percent per annum, coupled with an award of reasonable attorney fees and costs. Concrete Services additionally sought foreclosure of the lien and application of the proceeds toward payment of the amount owed.

In March 2009, Escamilla contacted Ticor Title Insurance Company, which had issued a title insurance policy insuring the parcel conveyed to Escamilla by Kanany. Escamilla requested that Ticor Title resolve the Concrete Services lawsuit on his behalf pursuant to the insurance policy. Escamilla thereafter answered Concrete Services' complaint and asserted cross-claims against Kanany for breach of warranties in the statutory warranty deed pursuant to which the parcel was conveyed, intentional and negligent misrepresentation, breach of contract, and unjust enrichment.

Kanany, however, failed to answer Concrete Services' complaint. Accordingly, Concrete Services moved for entry of an order of default and default judgment against Kanany. On September 4, 2009, the trial court granted Concrete Services' motion, entering a default judgment against Kanany in the amount of $11,306.26.

In May 2010, Ticor Title, on behalf of its insured, Escamilla, negotiated with Concrete Services a resolution of the claims against Escamilla. Ticor Title issued a check in the amount of $10,000 payable to Concrete Services "for the purpose of settling" the insurance claim asserted by Escamilla. Escamilla's

---

these defendants against the subject property were inferior and subordinate to the lien upon which Concrete Services sought to foreclose.

attorney thereafter mailed the settlement check to Concrete Services, enclosing three documents, entitled (1) "Stipulation and Order of Dismissal of All Claims Between Concrete Services, Inc., as Plaintiff, and Ovidio Escamilla, as Defendant Only"; (2) "Assignment of Default Judgment by Plaintiff Concrete Services, Inc. to Defendant Ovidio Escamilla"; and (3) "Partial Release of Lien". Concrete Services was authorized to cash the settlement check only upon signing and returning the stipulation and dismissal of claims against Escamilla, the assignment of the default judgment against Kanany to Escamilla, and the release of the lien against Escamilla's property.

The assignment of the default judgment by Concrete Services to Escamilla was filed in the trial court on June 18, 2010. Three days later, pursuant to the stipulation and dismissal signed by the parties, the trial court ordered that all claims between Concrete Services "and Defendant/Crossclaimant, Ovidio Escamilla only" be dismissed with prejudice.

Following assignment of the default judgment and dismissal of Concrete Services' claims against Escamilla, Kanany moved, on May 25, 2011, to vacate the default order and judgment entered against him more than 21 months earlier. He asserted that the order and judgment were void as a matter of law due to insufficient service of process and, thus, a lack of personal jurisdiction over him. Contrary to Kanany's contention, the proof of service indicated that, on March 1, 2009, the summons and complaint had been personally served upon Kanany at his Bonney Lake residence by leaving them with a co-resident named "Cameron Kanany." Kanany alleged, however, that his step-brother, Kamran Kanany, had

- 4 -

never resided at the Bonney Lake home. Kanany testified at a subsequent deposition that he did not receive the summons and complaint in March 2009; he further testified that he did not become aware of the lawsuit until after the default judgment was entered in September 2009.

In order to disprove Kanany's assertions, Escamilla submitted to the trial court evidence that Kanany had been aware of the Concrete Services litigation prior to entry of the default judgment. He provided a declaration of Greg Colbo, a senior title officer and underwriter at Ticor Title, who stated that he had received a telephone call from Kanany on March 11, 2009. During this call, Colbo asserted, Kanany stated that he had received the summons and complaint and discussed resolution of the lawsuit. Escamilla also submitted a handwritten note faxed by Kanany to the title officer inquiring as to whether Ticor Title would resolve the matter; the summons and complaint were faxed along with the note.[3] Moreover, Escamilla's attorney stated in a declaration that Kanany had contacted him numerous times during July and September of 2009 regarding the Concrete Services litigation.

On September 26, 2011, the trial court held an evidentiary hearing on

_____

[3] The handwritten note identifies the sender as "Robert Kanany" and states: "This is the paperwork you asked for. Are you going to answer this or do I need to move forward with an attorney to deal with them. Please get back to me." Kanany admitted during his deposition that the handwriting was his own and that he had sent the fax.

A letter from Colbo to Escamilla, dated March 16, 2009, further corroborates Colbo's recollection of the events. The letter informs Escamilla that Ticor Title had received his claim relating to the Concrete Services litigation. It further states:

We have been in contact with your seller [Kanany] as well as the attorney representing the lien claimant. It is my understanding that Mr. Kanany is in the process of obtaining a release of the mechanic's lien and dismissal of the lien foreclosure action. We are currently working with him to help expedite resolution of this matter.

Kanany's motion to vacate the default order and judgment due to improper service. Kanany testified that Kamran had never resided at the Bonney Lake home. In addition, he again testified that he had no recollection of being served with the summons and complaint in the Concrete Services litigation. However, evidence presented at the hearing indicated otherwise. Recent photographs of Kanany and Kamran, the testimony of the process server who had been asked to serve the summons and complaint on Kanany, and notes that had been made by the process server at the time of service established that Kanany had, in fact, been personally served with the summons and complaint. The evidence further suggested that Kanany, upon service, had erroneously identified himself as "Kamran Kanany" and stated that he resided at the Bonney Lake home.

Two days later, on September 28, 2011, Kanany filed a motion to amend his motion to vacate the default judgment "to add CR 60(b)(6)[4] as the basis for relief from default judgment." Kanany asserted that he had received "new evidence" that the $10,000 payment to Concrete Services had been made by Ticor Title, rather than by Escamilla. Although Kanany admitted that only Escamilla was an insured pursuant to the Ticor Title insurance policy, he nevertheless alleged that the default judgment against him had been satisfied by the $10,000 payment to Concrete Services.

At an October 6, 2011 hearing, Kanany conceded that service had been

---

[4] CR 60(b)(6) provides: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding" where "[t]he judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application."

- 6 -

proper. Rather, he contended that the default judgment had been satisfied when the $10,000 check was delivered to Concrete Services and, accordingly, that the assignment of the default judgment to Escamilla was improper. Conversely, Escamilla asserted that the $10,000 payment, rather than being intended to satisfy the default judgment, instead constituted consideration for dismissal of Concrete Services' claims against Escamilla and assignment of the default judgment from Concrete Services to Escamilla.

On March 7, 2012, the trial court entered findings of fact, conclusions of law, and an order on Kanany's amended motion to vacate the default judgment and order. The court determined that Kanany's testimony regarding whether he had seen the summons and complaint in March 2009 "was not credible." Rather, the court explained:

> It was clear to the court that Robert Kanany had been personally handed the summons and complaint at his home on March 1, 2009, and that he had told the process server that he was Kamran Kanany, in order to mislead the process server, and in preparation for misleading this court.

The trial court additionally rejected Kanany's argument that the $10,000 payment to Concrete Services constituted satisfaction of the default judgment. Instead, the court found that "[t]he evidence clearly establishes that the $10,000 was not paid to satisfy the Default Judgment, but was consideration for the assignment of the Default Judgment against Defendant Robert Kanany to Defendant Escamilla and the dismissal of Concrete Services, Inc.'s, claims against Defendant Ovidio Escamilla."

The court concluded that (1) Kanany had been properly served with the

summons and complaint; (2) the $10,000 payment to Concrete Services did not result in satisfaction of the default judgment; (3) "[w]hether the check was paid by Defendant Escamilla or Ticor Title Company is of no consequence to the issue of whether or not the Default Judgment should be vacated"; and (4) the default judgment was properly assigned to Escamilla. Thus, the court ruled that Kanany had failed to demonstrate that he was entitled to the relief he requested pursuant to CR 60(b)(6).

Finally, the trial court awarded to Escamilla attorney fees and costs incurred in defending the default judgment. The court determined that, because the default judgment included an award of attorney fees, such an award was authorized, pursuant to the same statute, for expenses incurred in defending that judgment. Moreover, the court concluded that an award of attorney fees was justified pursuant to Civil Rule (CR) 11, given that "Robert Kanany lied to this court" and that his motion to vacate "was a frivolous motion without legal or factual basis" that "served to waste resources of the parties, attorneys, and the court." On March 28, 2012, the trial court entered a supplemental judgment regarding the default judgment, awarding to Escamilla $22,825 in attorney fees and $556.20 in costs incurred in defending the default judgment against Kanany's motion to vacate.

Kanany appeals.

II

Kanany first contends that the trial court abused its discretion by denying his request for relief from the default order and judgment pursuant to CR

60(b)(6). This is so, he asserts, because the $10,000 payment made by Ticor Title on behalf of Escamilla to Concrete Services constituted satisfaction of the default judgment against him. However, the trial court's finding of fact that the $10,000 payment constituted consideration for dismissal of Concrete Services' claims against Escamilla and assignment of the default judgment—*not* satisfaction of that judgment—is supported by substantial evidence. Accordingly, the trial court did not err by declining to award the requested relief.

"We review a trial court's decision on a motion to set aside a default judgment for abuse of discretion." Little v. King, 160 Wn.2d 696, 702, 161 P.3d 345 (2007). "A trial court abuses its discretion when its decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" Tribble v. Allstate Prop. & Cas. Ins. Co., 134 Wn. App. 163, 170, 139 P.3d 373 (2006) (quoting State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). "In reviewing a trial court's findings and conclusions, we determine whether substantial evidence supports challenged findings of fact and, in turn, whether the findings support the conclusions of law." State v. McEnry, 124 Wn. App. 918, 924, 103 P.3d 857 (2004). "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." McEnry, 124 Wn. App. at 924.

"A judgment creditor can assign his rights in the judgment to a third party. However, if the judgment debtor satisfies the judgment before it is assigned by the judgment creditor, the satisfaction would bar the assignee from enforcing the judgment." 47 AM. JUR. 2D *Judgments* § 811 (2013). Pursuant to this "one

satisfaction" rule, a judgment creditor can receive only one satisfaction of a debt; accordingly, once the judgment has been satisfied, the judgment creditor no longer has an interest to assign. 47 AM. JUR. 2D *Judgments* § 811 (2013). "Satisfaction" is "[t]he giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation." BLACK'S LAW DICTIONARY 1460 (9th ed. 2009). Thus, a judgment is not satisfied where a third party's payment to the creditor is intended to purchase the debt rather than to extinguish it:

> A third person's payment of a debtor's obligation differs from the third person's purchase of the debt in that payment discharges the debt while purchase does not discharge the debt, which is enforceable by the third person. Ordinarily, the intention of the parties determines whether a transfer of money by a third person to a creditor constitutes a discharge or purchase of an underlying debt.

60 AM. JUR. 2D *Payment* § 5 (2013).

Here, the trial court found that the evidence clearly established that the $10,000 payment to Concrete Services was intended as consideration for the assignment of the default judgment against Kanany to Escamilla and the dismissal of Concrete Services' claims against Escamilla. The court found that the $10,000 payment was not intended to satisfy the default judgment against Kanany. Accordingly, the court concluded that, contrary to Kanany's assertion, the $10,000 payment did not result in the satisfaction of the default judgment against him.

Substantial evidence supports the trial court's findings. The record shows that Ticor Title issued a title insurance policy to Escamilla insuring the title of the

parcel conveyed to Escamilla by Kanany. It was pursuant to this policy that Escamilla requested that Ticor Title resolve the Concrete Services litigation on his behalf. Ticor Title thereafter issued a $10,000 check, payable to Concrete Services, indicating that the check was "for the purpose of settling" the insurance claim asserted by Escamilla.[5] Ticor Title and Concrete Services agreed that, in exchange for the $10,000 payment, Concrete Services would dismiss its claims against Escamilla, release the lien against Escamilla's property, and assign the default judgment in its favor against Kanany to Escamilla. The letter to Concrete Services accompanying the $10,000 check explicitly states that Concrete Services was authorized to cash the check only upon signing and returning the stipulation and dismissal, assignment of the default judgment, and partial release of the lien. In stark contrast to the abundance of evidence indicating that the $10,000 payment constituted consideration for dismissal of the claims against Escamilla and assignment of the default judgment is the complete absence of evidence suggesting that the payment was intended to satisfy the default judgment entered against Kanany.

Moreover, the amount of the default judgment was $11,306.26. Thus, the $10,000 payment would not constitute full payment of the judgment, further supporting the trial court's finding that the payment was not intended to satisfy

---

[5] In contending that the $10,000 payment satisfied the default judgment against him, Kanany asserts that the payment constituted settlement of Concrete Services' claims. However, the record clearly demonstrates that the $10,000 payment was intended to settle only those claims by Concrete Services asserted against Escamilla, thereby settling Escamilla's insurance claim against Ticor Title. Nowhere does the record indicate that the $10,000 payment was intended as settlement of Concrete Services' claims against Kanany. Indeed, Concrete Services had already obtained a default judgment against Kanany; thus, there were no pending claims against Kanany to be settled.

that judgment. Finally, because, as he admits, Kanany is not an insured pursuant to the Ticor Title policy, Ticor Title had no incentive to satisfy the judgment on Kanany's behalf. Rather, Ticor Title, having paid $10,000 to settle the claims against Escamilla, its insured, had incentive to purchase the judgment and proceed against Kanany in order to recover that expense.[6] Thus, the record clearly demonstrates that the parties intended the $10,000 payment to constitute consideration for assignment of the default judgment, not the satisfaction of that judgment.[7]

Substantial evidence supports the trial court's finding that the $10,000 payment was intended as consideration for dismissal of the claims against Escamilla and assignment of the default judgment to Escamilla—*not* to satisfy a judgment against a non-party to that contract. This finding supports the trial court's conclusion that the $10,000 payment did not result in satisfaction of the default judgment against Kanany. Notwithstanding repeated requests at oral

---

[6] As the trial court found, and as Kanany now admits, the title insurance policy states that Ticor Title shall be subrogated and entitled to the rights of Escamilla where Ticor Title settles a claim pursuant to the policy. Thus, contrary to Kanany's contention, the fact that Ticor Title issued the $10,000 check to Concrete Services, and yet the default judgment was assigned to Escamilla himself, is of no moment.

[7] Kanany argues at great length regarding the timing of the delivery of the $10,000 check to Concrete Services, asserting that, because the check was delivered prior to the assignment of the default judgment, the default judgment had been satisfied and could not thereafter be assigned. Because, however, the evidence supports the trial court's determination that the $10,000 payment was not intended to satisfy the default judgment, the timing of the delivery of the check is of no consequence. Consideration for assignment of a judgment does not satisfy that judgment simply because the consideration was delivered prior to the assignment. Kanany's argument is wholly without merit.

Moreover, the cases cited by Kanany in support of his argument are inapposite. See Charles P. Young Co. v. Anaya, 119 N.M. 449, 891 P.2d 1203 (1995); Strong Mem'l Hosp. v. Almac Bldg. Maint., Inc., 122 Misc.2d 246, 470 N.Y.S.2d 542 (1983). No judgment was obtained against Escamilla. Accordingly, judicial authority regarding the obligations of joint debtors is irrelevant.

argument that he do so, Kanany points to no evidence in the record indicating that the $10,000 payment was intended to satisfy the judgment against him. Accordingly, we reject Kanany's specious argument and hold that the trial court properly denied his CR 60(b)(6) request for relief from the default judgment.[8]

III

Kanany additionally asserts that the trial court erred by granting an award of attorney fees and costs to Escamilla. However, both RCW 60.04.181(3), pursuant to which fees were awarded as part of the default judgment, and CR 11 provided applicable, independent bases for the trial court's grant of the fee award. Accordingly, the court did not abuse its discretion by granting that award.

We will not disturb a trial court's decision to grant or deny an award of attorney fees absent an abuse of discretion. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 283-84, 279 P.3d 943 (2012). Similarly, we review for abuse of discretion an award of sanctions pursuant to CR 11. Marina Condo. Homeowner's Ass'n v. Stratford at Marina, LLC, 161 Wn. App. 249, 263, 254 P.3d 827 (2011). As explained above, "[a] trial court abuses its discretion if its order is manifestly unreasonable or is based on untenable grounds." Marina Condo. Homeowner's Ass'n, 161 Wn. App. at 263.

Here, fees were awarded as an element of the default judgment against Kanany pursuant to RCW 60.04.181(3), which provides authority for a court to

---

[8] Kanany challenges numerous other findings of fact and conclusions of law made by the trial court. After a complete review of the record, we conclude, with regard to the challenged findings and conclusions, that either (1) the findings and conclusions are of no moment to the resolution of this case or (2) substantial evidence supports the challenged findings, which themselves support the court's conclusions.

allow the prevailing party in a priority of liens action to recover, among other expenses, "attorneys' fees and necessary expenses incurred . . . in the superior court, court of appeals, supreme court, or arbitration, as the court or arbitrator deems reasonable." Accordingly, the trial court determined that, because the default judgment included an award of attorney fees and costs against Kanany, Escamilla was entitled to an award of fees incurred in defending the default judgment. The court additionally determined that

> Escamilla is entitled to an award of costs and attorneys' fees under CR 11.[9] Robert Kanany lied to this court. His motion to vacate the default and default judgment was a frivolous motion without legal or factual basis. It served to waste resources of the parties, attorneys, and the court.

In its supplemental judgment, the court explained that it found "this sanction, in light of the particulars of this particular case, to be the least severe necessary to deter baseless filings and to curb abuses of the judicial system."

In challenging the fee award, Kanany baldly asserts that the trial court granted the award "without a fair and impartial assessment of all the circumstances comprising this matter." Br. of Appellant at 46-47. He additionally asserts that the fee award was unwarranted because, according to Kanany, the entire matter was caused by Concrete Services' and Escamilla's "fail[ure] to

---

[9] CR 11 provides that the signature of a party or attorney on a pleading, motion, or legal memorandum constitutes a certificate by that party or attorney that the pleading, motion, or legal memorandum is well grounded in fact, warranted by existing law or a good faith argument for a change in existing law, is not interposed for an improper purpose, and contains only factual contentions or denials warranted by the evidence. CR 11(a). Where a pleading, motion, or legal memorandum is signed in violation of the rule, "the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred . . . , including a reasonable attorney fee." CR 11(a).

- 14 -

acknowledge full payment and satisfaction" of the default judgment. Br. of Appellant at 47. The record belies Kanany's assertions.

Instead, the trial court correctly determined that, because the default judgment included an award of attorney fees against Kanany, such an award was authorized for those expenses incurred in defending that judgment. See RCW 60.04.181(3) (providing for a fee award to the prevailing party in a lien action where the fees are incurred "in the superior court, court of appeals, supreme court, or arbitration"); see also Aecon Bldgs. Inc. v. Vandermolen Constr. Co., Inc., 155 Wn. App. 733, 743, 230 P.3d 594 (2009) (granting a fee award to the prevailing party for expenses incurred in defending against an appeal of a default judgment where the underlying contract provided for such an award in the event of litigation between the parties). In addition, CR 11 provided a sufficient and independent basis for the award of attorney fees granted by the trial court. The trial court's determination that Kanany lied to the court is not reviewable on appeal. See Frank Coluccio Constr. Co., Inc. v. King County, 136 Wn. App. 751, 770, 150 P.3d 1147 (2007) ("The trial court's credibility determination and its resolution of the truth from conflicting evidence will not be disturbed on appeal."). Moreover, the record supports the trial court's determination that the motion to vacate the default order and judgment was frivolous and without legal or factual basis.

We hold that an award of attorney fees in the trial court was warranted

pursuant to both RCW 60.04.181(3) and CR 11.[10] Accordingly, we affirm the trial court's grant of a fee award in the instant litigation.

IV

Escamilla requests an award of attorney fees on appeal. Such an award is warranted against Kanany pursuant to both CR 11 and RCW 60.04.181, the bases for the fee award in the trial court. In addition, because we conclude that Kanany's appeal is frivolous, an appellate fee award is warranted against both Kanany and his counsel pursuant to Rule of Appellate Procedure (RAP) 18.9(a).

An appellate fee award in favor of Escamilla and against Kanany is authorized by the same grounds justifying the trial court's award of attorney fees—CR 11 and RCW 60.04.181. An award of attorney fees on appeal is authorized by CR 11 where sanctions have been imposed in the trial court pursuant to that rule, as responding to the appeal "could reasonably be viewed as a cost of collecting the judgment" entered by the trial court. Skilcraft Fiberglass, Inc. v. Boeing Co., 72 Wn. App. 40, 48, 863 P.2d 573 (1993), abrogated on other grounds by Morin v. Burris, 160 Wn.2d 745, 161 P.3d 956 (2007). Moreover, an appellate fee award is available to the prevailing party on appeal pursuant to RCW 60.04.181(3). Woodstream Constr. Corp. v. Van Wolvelaere, 143 Wn. App. 400, 409-10, 177 P.3d 750 (2008).

Moreover, because we determine that Kanany's appeal is frivolous, we grant to Escamilla an award of attorney fees on appeal, pursuant to RAP 18.9(a),

---

[10] On appeal, Kanany asserts that the fees awarded pursuant to CR 11 must necessarily be in a lesser amount than the fees awarded pursuant to the statute. Because we affirm the award on both bases, we need not further address this contention.

against both Kanany and his counsel. RAP 18.9(a)[11] provides for the imposition of sanctions where a party brings a frivolous appeal. Here, the record clearly supports the trial court's finding that the $10,000 payment from Ticor Title to Concrete Services was intended by the parties to constitute consideration for dismissal of Concrete Services' claims against Escamilla and assignment of the default judgment to Escamilla. To prevail on appeal, Kanany must demonstrate that this finding is not supported by substantial evidence. This he does not even attempt to do. Moreover, Kanany fails to point to any evidence in the record indicating that the $10,000 payment was intended to satisfy the default judgment against him; indeed, no such evidence exists. Accordingly, because Kanany's appeal "presents no debatable issues upon which reasonable minds could differ and there is no possibility of reversal," his appeal is frivolous. Wellman & Zuck, Inc. v. Hartford Fire Ins. Co., 170 Wn. App. 666, 681, 285 P.3d 892 (2012), review denied, 176 Wn.2d 1019 (2013). RAP 18.9(a) sanctions against both Kanany and his counsel are thus warranted.

Upon proper application, the commissioner of this court will enter an order awarding to Escamilla attorney fees and costs on appeal consistent with this opinion.

---

[11] "The appellate court on its own initiative or on motion of a party may order a party or counsel . . . who . . . files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." RAP 18.9(a).

Affirmed.

We concur:

_Dwyer, J._

_Spearman, A.C.J._

_Lau, J._