[No. 4707–II.   Division Two.   April 3, 1981.]

JOGINDER S. REKHI, ET AL, *Respondents,* v. BJARNI
L. OLASON, *Appellant,* GARDIS I. OLASON,
ET AL, *Respondents.*

*William L. Bishop, Jr.,* for appellant.

*William M. Robinson, George W. Schoonmaker, Marlin L. Vortman,* and *William R. Hickman,* for respondents.

PEARSON, J.—The primary issue on this appeal is whether a client's oral authority to his attorney to enter into a real estate transaction is binding on the client where the attorney neglected to complete a form power of attorney that the client had signed in blank. The appeal also challenges a contempt order entered against both the attorney and the client who refused to convey clear title to the purchasers after specific performance of the contract was ordered, and while that order was pending on appeal. We affirm on both issues and also hold on the purchasers' cross–appeal that the trial court should have allowed consequential damages to them.

This specific performance action was brought by the purchasers Rekhi against the sellers, Bjarni and Gardis Olason, John Darrah, Mr. Olason's attorney, and both the listing and selling real estate agents. The case was tried to the court. After a lengthy trial, the court found and concluded that the client, Bjarni Olason, was bound by the acts of his attorney and that a decree of specific performance should

be issued, to be performed by February 15, 1979. The court denied the purchasers' request for consequential damages, finding that although the delays had caused an estimated loss of $3,500 to Rekhis, the loss would not be awarded because in the interim the property had increased in value. When Mr. Olason, on the advice of another lawyer, Mr. Ordal, refused to give the requisite deed by the time decreed, the court found them both in contempt, which was subsequently purged by an appropriate deed. The court also allowed certain payments to be deducted from the proceeds of closing to secure attorney's fees and costs to certain of the parties, the real estate commission, a dissolution lien to Mrs. Olason, and the mortgage of record.

The appeal has been brought on a short record without a complete verbatim report of proceedings. Accordingly, the trial court's findings of fact are accepted as verities. *Gaupholm v. Aurora Office Bldgs., Inc.*, 2 Wn. App. 256, 467 P.2d 628 (1970). Also, none of the findings of fact are challenged by plaintiffs.

The undisputed findings establish that Mr. and Mrs. Olason owned the property in question prior to the dissolution of their marriage in January 1978. Both Mr. Olason and his counsel, Mr. Darrah, believed it was necessary to sell the residence to satisfy the dissolution settlement. Olason approached a listing agent for that purpose. Because Olason was planning to leave for Spain on June 16, 1977, he told his attorney on June 14 that the listing agent had recommended that Darrah have a power of attorney to negotiate a sale in his absence. On June 15, Olason executed a general power of attorney form for that purpose. None of the blanks on the form were ever completed, and the instrument was never acknowledged.

On the above facts, the court found that "Mr. Darrah reasonably understood that he was to utilize the power of attorney to negotiate a sale of said residence in Mr. Olason's absence at any price Mr. Darrah felt was reason-

able under the circumstances."[1]

While Olason was abroad, Darrah signed an earnest money agreement as attorney in fact for Olason[2] to sell the property to the Rekhis for $90,000. Although the property was listed for $112,500, the court found that Olason and Darrah, acting upon the recommendation of the listing agent, desired to list the residence for sale at $105,000, and to effect a sale at approximately $99,500. The higher listing price was occasioned as a compromise with Mrs. Olason and her attorney.

In connection with the $90,000 selling price, the trial court found:

> Although Mr. Darrah felt that $90,000 was a little low, Mr. Darrah knew that Mr. Olason was anxious to conclude the dissolution proceeding and reasonably believed that Mr. Olason was not concerned about a difference to Mr. Olason of approximately $5,000, less income taxes . . .

The closing date was set for September 20.

Olason returned from Spain on June 30, and was informed by Darrah on July 1 of the terms of the sale. After securing a copy of the agreement on about July 11, he expressed no objection to the agreement until August 4, when he discovered it would be more expensive than he thought to acquire another home. However, Olason did not question Darrah's authority to close the sale, nor did he indicate at any time prior to the closing date that he would not proceed with the sale.

Following a 5–day trial in November 1978, the court ordered specific performance. The rationale of the court's conclusions which are challenged on appeal was that in spite of the fact the executed power of attorney had never been completed or acknowledged, Olason had a clear intent

---

[1]The court also found that Olason was familiar with the purpose of a general power of attorney, and intended that Darrah have his general power of attorney for the purpose of selling the residence in his absence.

[2]Mrs. Olason also signed the agreement, with her attorney's approval.

to grant Darrah authority to act for him in the sale of the residence. The court concluded that the power of attorney should be reformed by completion of the necessary blanks.[3] The court also ordered Olason to pay attorney's fees to the purchasers, and attorney's fees to the realtors, as well as their commission. The court denied Darrah's cross claim against Olason for attorney's fees incurred in his defense, but allowed dissolution attorney's fees to be paid from the proceeds of the sale. The purchasers were denied attorney's fees from Mrs. Olason.

Olason's primary argument on appeal is that the earnest money agreement is not in compliance with the statute of frauds, and therefore unenforceable, since neither he nor any lawfully authorized person signed it. He also contends that the incomplete power of attorney conferred no authority on Darrah, that parol evidence could not be used to supply the crucial terms, and that without the acknowledgment the instrument is a nullity which may not be reformed.

We need not reach these issues, nor need we address the waiver and estoppel grounds which Olason also propounds. It is well settled that an agent who has oral authority to sell real estate may bind his principal with respect to the rights of third parties without violating the statute of frauds. Restatement (Second) of Agency § 30 (1958). *Peirce v. Wheeler,* 44 Wash. 326, 87 P. 361 (1906); *Wolley v. Butts,* 19 Wn. App. 876, 578 P.2d 80 (1978). There is no reason the rule should apply with less force where the oral authority to sell real estate is given to an attorney in connection with a dissolution proceeding. Attorneys are held to the highest standards of fidelity in handling their clients' affairs, and while written authority is prudent, as evidenced by this case, the court's findings show that Olason was neither overreached nor misled by his counsel's actions. Darrah's oral authority was clearly estab-

---

[3]The court also grounded the decree of specific performance on waiver and estoppel.

lished by the findings. Those findings are buttressed by Olason's signature on the general power of attorney form, and we hold the oral agency agreement binding upon him as to the innocent third party purchasers.

We next address the contempt citation. On February 2, 1979, the day the decree of specific performance was entered, Mr. Ordal of Dodd & Coney, substituted attorneys for Olason, informed the court that his law firm had taken a deed of trust on the residence from Olason to secure payment of attorney's fees incurred in Olason's defense[4] of the specific performance action. This deed of trust was filed of record 2 days prior to February 2, 1979. On that date, the court ordered reconveyance of the deed of trust to clear title to the property. On the advice of Mr. Ordal, Olason issued a deed to the Rekhis by inserting language on the statutory warranty deed to the effect that it was being executed pursuant to court order, subject to and conditioned upon final determination of the case on appeal.

The conditional language in the deed effectively thwarted the decree of specific performance because Rekhis' mortgage lender refused to finance the purchase. On February 13, the court entered an order to Olason and Dodd & Coney, requiring them to show cause on February 20, 1979, why they should not be held in contempt for failing to comply with the court's order of February 2, 1979. At the contempt hearing, the trial court held both Dodd & Coney and Olason in contempt. The court allowed both to purge the contempt by posting a supersedeas bond of $1,025 and giving an unconditional deed. This was done. We do not find the court abused its discretion in its contempt order. Disobedience of a lawful decree or order is a statutory ground for contempt. RCW 7.20.010(5). *See State v. Estill*, 55 Wn.2d 576, 349 P.2d 210, 89 A.L.R.2d 1251 (1960) (court has inherent power to punish for contempt). The form of the conveyance was an obvious violation of the

---

[4]By this time, Olason had been awarded the residence in the dissolution proceedings, subject to an equitable lien of $44,213 to Mrs. Olason.

trial court's order. If Olason had wished a stay of the decree pending trial, he could have followed the supersedeas bond procedures of RAP 8.1(b). Punishment for contempt of court is within the sound discretion of the judge and will not be disturbed pending appeal. *State v. Caffrey,* 70 Wn.2d 120, 422 P.2d 307 (1966).

■ Olason contends that he relied on advice of counsel and for that reason should not be held in contempt. But reliance on the advice of counsel is no defense to contempt for violation of the court's order. *Ramstead v. Hauge,* 73 Wn.2d 162, 437 P.2d 402 (1968). We find no abuse of discretion.

Turning to the cross appeal of plaintiffs Rekhi, the issue is whether the trial court should have allowed the Rekhis a judgment for consequential damages in addition to granting the specific performance remedy. This question has not been specifically addressed in Washington, although our Supreme Court is committed to the principle that when the equitable jurisdiction of the court is invoked by the parties, whatever relief the facts warrant may be granted. *Kreger v. Hall,* 70 Wn.2d 1002, 425 P.2d 638 (1967); *Tri–State Terminal Co. v. Washington Wheat Growers Ass'n,* 134 Wash. 519, 236 P. 75 (1925); *accord, Ban–Co Inv. Co. v. Loveless,* 22 Wn. App. 122, 587 P.2d 567 (1978).

■ Other jurisdictions have followed the lead of the Restatement of Contracts § 365, comment *d* (1932), and have granted damages in addition to specific performance. The damages are not awarded for breach of contract, but are awarded so that the purchaser, unable to have exact performance because of the delay, may have an accounting of any losses caused by the delay, so that he can be restored as nearly as possible to the position he would have been in had the seller performed. *Pearce v. Third Ave. Improvement Co.,* 221 Ala. 209, 128 So. 396 (1930). *See generally* Annot., *Specific performance—delay,* 7 A.L.R.2d 1204 (1949); Annot., *Specific Performance—Incidental Damages,* 95 A.L.R. 228 (1935); Restatement of Contracts § 365, comment *d, supra,* provides:

[A] decree for specific performance seldom brings about performance within the time that the contract requires. In this respect such a decree is nearly always a decree for less than exact and complete performance. For the partial breach involved in the delay, money damages will be awarded along with the decree for specific performance.

We think this rule is a good one and should apply to a case of this kind where the delay was significant. The real rationale of the rule is that since the contract is being enforced retrospectively, the equities should be adjusted accordingly.

We do not, however, believe consequential damages should be awarded in all cases where a delay in performance has caused inconvenience and some incidental expenses. The award should be left to the equitable discretion of the trial court. In this case, we think the trial court, in view of its unchallenged finding that $3,500 in damages occurred because of the delay, abused its discretion in refusing to allow compensation for the loss solely because the property value had increased. The increased value belonged to the purchasers, and would have inured to them had performance been timely. There are no equities on Olason's side which would warrant placing this loss on the purchaser. The findings established that Olason refused to perform despite legal advice from two lawyers that he was obliged to perform. The case should be remanded with instructions to enter a judgment against Olason for $3,500 in favor of Mr. and Mrs. Rekhi. The trial court may also consider damages for the additional delays caused by this appeal. We also believe that attorney's fees should be awarded for the appeal to both the real estate broker and the purchasers Rekhi, inasmuch as such fees are authorized by their respective contracts. *Granite Equip. Leasing Corp. v. Hutton*, 84 Wn.2d 320, 525 P.2d 223 (1974).

Affirmed in part. Remanded for allowance of consequential damages of $3,500 and for consideration of whether Rekhis should have an additional award of consequential damages while the appeal was pending and for assessment

of reasonable attorney's fees on appeal for the respondents, except Darrah.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied May 21, 1981.