# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 71119-9-I |
| | ) | No. 72592-1-1 |
| AMBER SCHUBERT, | ) | consolidated with |
| | ) | No. 72593-9-I |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| VICTOR SCHUBERT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 3, 2015 |
| | ) | |

VERELLEN, J. — Victor Schubert appeals the amended decree of dissolution and the order on modification of maintenance and child support. He contends that because he was unemployed at the time of trial and modification, the trial court abused its discretion in awarding maintenance and imputing income to him for purposes of the child support award. Because Victor did not provide us with an adequate record on appeal, we affirm the trial court's fact-based discretionary rulings.

Victor further contends that the trial court erred in not including Amber Schubert's imputed income in the child support worksheets. Because he raised this issue for the first time on appeal, his argument fails. Victor also argues that the trial court erred in an upward deviation of child support. But he does not establish that this rounding up was a deviation as contemplated by RCW 26.19.035(4). Lastly, he contends that the trial court must use the lodestar method in determining appropriate attorney fees. But because the primary considerations for an award of attorney fees in dissolution actions

are equitable, trial courts are not always required to apply the lodestar method. Accordingly, we affirm.

FACTS

Victor Schubert married Amber Schubert in California on April 1, 2000.[1] Victor worked as a patent attorney there from 1992 until January 2009, when the parties relocated to Washington so that Victor could pursue an attorney position at Intellectual Ventures, where he earned more than $500,000 per year. Amber has been out of the work force for almost all of their marriage to raise their two children.

The Schuberts separated on December 1, 2011, and Amber petitioned for dissolution on March 28, 2012. On April 30, 2013, Victor was laid off from his position at Intellectual Ventures. He received 16 weeks of severance pay, plus payment of medical insurance benefits for the family through August 2013.

Victor had not yet found employment at the time of trial from June 3, 2013 through June 10, 2013. The main issues at trial were property distribution, maintenance, child support, and attorney fees. The Schuberts agreed to the terms of a parenting plan, which designated Amber as the primary residential parent of the children.

The trial court awarded Amber $648,936 of community property (54.24 percent of the community assets) and $26,644 of separate property. It awarded Victor $547,413 of community property (45.76 percent of the community assets) and $434,724 of separate property.

---

[1] To avoid confusion, we refer to the Schuberts by first name.

The parties disagreed as to spousal maintenance. The trial court awarded Amber $5,500 in monthly maintenance for a period of 48 months commencing September 1, 2013, plus an additional 25 percent of any annual income in excess of $225,000 for a period of eight years. The trial court found that:

> [Victor] has historically had very significant income and there is no reason to expect that he will not continue to earn at a significant level. Upon finalization of this matter, [Victor]'s income will allow him [to] support himself in a manner similar to that enjoyed during the marriage while continuing to maximize his retirement accounts and increase his assets.
>
> [Amber], on the other hand, will not, even after obtaining a degree in the healthcare field, have earnings approaching those of [Victor]. [Amber], and the children who are primarily with her, will live a far more modest life given the limits of [Amber]'s income.[2]

The trial court acknowledged that Victor's "niche as a patent attorney [was] very narrow" due to changes in the industry making his prospects not as plentiful as they were in the past.[3] The court found he was diligently searching for employment and that "[Victor] has an earning ability of $225,000 per year, which is much less than he earned at [Intellectual Ventures]."[4]

Regarding child support, the trial court found Amber underemployed in a healthcare position. Because she lacked sufficient work history on which to base her income, the trial court imputed income to her under RCW 26.19.071(6)(e) at a median level based on census data. The trial court found Victor unemployed and imputed monthly income to him under RCW 26.19.171(6)(b) based on his historical income averaging over $500,000 annually for the past five years and having been in excess of

---

[2] Clerk's Papers (CP) at 569. (No. 71119-9-I).

[3] Id. at 571.

[4] Id.

3

$250,000 since the parties married in 2000. The trial court ordered him to pay $2,000 in monthly child support. In doing so, the court increased the child support award above the standard calculation of $1,703 per month based on its finding that Victor "has the ability to pay this amount and the children are in need of this level of support."[5] Finally, the court awarded Amber attorney fees in the amount of $50,000, finding that Victor had the ability to pay a portion of her fees.

On February 28, 2014, Victor petitioned for modification of maintenance and child support. On September 11, 2014, the trial court entered an order granting Victor's petition for modification of the amended decree of dissolution. It found that Victor was making a diligent job search, but had not found employment. It acknowledged that Victor's employment future was being affected by a shift toward filling patent attorney jobs with less experienced attorneys and persons with master of business administration degrees. The trial court reduced maintenance to $2,500 per month commencing March 2014, noting Amber's need versus Victor's ability to pay, as well as Amber's irresponsible use of the maintenance she had received. It did not grant Victor's petition for modification of child support.

Victor appeals both the initial decree and the order on modification.

## ANALYSIS

The premise of Victor's primary argument on appeal is that the trial court abused its discretion in its initial and modified award of maintenance. He contends that because he was unemployed and diligently searching for employment, Amber should not have been awarded maintenance. But Victor provided us with only three

---

[5] Id. at 615.

and one-half hours of the record from a five-day trial. The record is inadequate to review the merits of Victor's contentions.[6]

"The party seeking review has the burden of perfecting the record so that this court has before it all of the evidence relevant to the issue[s]."[7] Although Victor claims that "[t]he verbatim transcript regarding employment for both parties was provided for review on appeal,"[8] the only verbatim reports of proceedings provided to this court concern the testimony of Amber and expert witnesses regarding her employment prospects. It is undisputed that Victor testified at trial regarding his past employment and future prospects, but the record before us contains none of this testimony.[9] Although Victor contends that the missing record is related to rulings he has not challenged on appeal, the issues he has raised require a full record regarding his economic circumstances, including his past earnings and prospects for future income. The fact-based trial court decisions challenged by Victor on appeal reveal how the inadequate record hampers our review.

First, as to his challenge to the initial and modified maintenance awards, both are reviewed for an abuse of the trial court's broad discretion.[10] "'The only limitation on [the] amount and duration of maintenance under RCW 26.09.090 is that, in light of the

---

[6] Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988).

[7] Olmsted v. Mulder, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993); RAP 9.2(b).

[8] Appellant's Reply Br. at 5.

[9] Victor's declaration includes minimal information about his earnings and no details about his prospects.

[10] In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994); In re Marriage of Spreen, 107 Wn. App. 341, 346, 28 P.3d 769 (2001).

relevant factors, the award must be just.'"[11] "Those factors include, but are not limited to: (1) the financial resources of the party seeking maintenance; (2) the time needed to acquire education necessary to obtain employment; (3) the standard of living during the marriage; (4) the duration of the marriage; (5) the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; (6) and the ability of the spouse from whom maintenance is sought to meet his or her needs and financial obligations while providing the other spouse with maintenance.[12]

Victor specifically criticizes the trial court for its "speculation" as to his future income.[13] He also contends that the trial court failed to adequately consider his ability to meet his own financial needs and obligations as required by RCW 26.09.090(f).

The trial court clearly found that Victor had the present ability to pay maintenance. The evidence before the court included his severance package, the disproportionate award of assets,[14] and potential employment income the court was confident he would soon earn. On the current record, Victor cannot demonstrate an abuse of discretion as to the amount of the initial or modified maintenance awards.[15] [16]

---

[11] In re Marriage of Valente, 179 Wn. App. 817, 821, 320 P.3d 115 (2014) (quoting In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)).

[12] Id. at 821-22.

[13] Appellant's Reply Br. at 9.

[14] Victor received $306,557 more in total assets than Amber. See In re Marriage of Crosetto, 82 Wn. App. 545, 559, 918 P.2d 954 (1996) (trial court was entitled to consider property division in its determination of maintenance and to consider maintenance in its property division).

[15] Relying on In re Marriage of Drlik, 121 Wn. App. 269, 87 P.3d 1192 (2004), Victor further argues that "[t]he trial court should have at least suspended the maintenance obligation pending review/modification upon the earlier of his employment or nine months, whichever was sooner." Appellant's Br. at 14 (No. 72592-I). But in Drlik, the court held merely that the trial court had authority to temporarily, but not indefinitely, suspend the husband's maintenance obligation because he was stricken with brain

Second, Victor also challenges the use of "a formulaic escalation clause [in the maintenance award] that did not relate to the need of [Amber],[17] as well as the duration of the maintenance award. Use of an uncapped escalation clause can be troublesome, but we need a more complete record to evaluate this issue in the entire economic and employment context. Moreover, Victor fails to cite any relevant authority pertaining to escalation clauses in maintenance awards and instead relies entirely on authority involving child support orders. As to the duration of the maintenance award, we need a record which includes all the testimony regarding the full economic background of both spouses.

Third, Victor challenges the imputation of income for purposes of the child support award. Specifically, he argues that the child support order was an abuse of discretion based upon Victor's involuntary unemployment. Without citing any precise authority, Victor relies on his conclusory statement that "[i]t is contradictory for the court to find that [he] is laid off and diligently searching for work, thus involuntarily unemployed, and then apply RCW 26.19.071(6)(b) and impute income."[18] And without an adequate record on appeal to analyze the trial court's findings, Victor does not demonstrate any abuse of discretion or error of law in imputing income to him.

---

cancer and currently lacked the ability to pay and might regain the ability to pay. Drlik does not suggest that a trial court is compelled to make such a temporary adjustment.

[16] Rekhi v. Olason, 28 Wn. App. 751, 753, 626 P.2d 513 (1981) (when an appeal is brought on a short record without a complete verbatim report of the proceedings, the trial court's findings of fact are accepted as verities).

[17] Appellant's Br. at 1 (No. 71119-9-I).

[18] Appellant's Br. at 26 (No. 72592-1-I); see Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990); Saunders v. Lloyd's of London, 113 Wn.2d 330, 345, 779 P.2d 249 (1989).

Fourth, Victor further contends that "[t]he trial court imputed income to Amber in the Findings of Fact, and it is an error of law to not include that imputed income in the child support worksheets."[19] But based on the record before us, it appears he is raising this issue for the first time on appeal.[20] Thus, Victor's argument fails.

Fifth, Victor argues that "[t]he upward deviation of the child support obligation above the standard calculation without written findings when the father is involuntarily unemployed is error."[21] But under RCW 26.19.020, "[w]hen combined monthly net income exceeds twelve thousand dollars, the court may exceed the presumptive amount of support set for combined monthly net incomes of twelve thousand dollars upon written findings of fact." Victor does not establish that the upward rounding off of child support was a "deviation" as contemplated by RCW 26.19.035(4).[22]

Sixth, Victor argues that "[t]he trial court erred in failing to deduct the costs of sale from the parties' Newcastle, Washington home."[23] He contends that "[b]ased on the court's orders of maintenance and child support . . . when he had no income, [he] had no choice to but [sic] sell the Newcastle home immediately."[24] A trial court may only deduct the costs of sale if a sale is imminent and necessary.[25] In his trial brief, Victor stated that "[w]hen the market recovery is sufficient for him to recover his

---

[19] Appellant's Reply Br. at 21.

[20] RAP 2.5(a).

[21] Appellant's Br. at 28 (No. 72592-1-I).

[22] Leslie v. Verhey, 90 Wn. App. 796, 803-04, 954 P.2d 330 (1998).

[23] Appellant's Br. at 2 (No. 71119-9-I).

[24] Id. at 30-31.

[25] In re Marriage of Stenshoel, 72 Wn. App. 800, 810, 866 P.2d 635 (1993).

separate property investments, he will sell the residence."[26] Absent a more complete record of the trial, we do not know if Victor's testimony was consistent with this statement. Accordingly, Victor does not establish that it was an abuse of discretion to deny a deduction for the costs of sale.

Finally, Victor challenges the attorney fees award, asserting that "[t]he court made no finding of the reasonableness of [Amber's] fees."[27] This court reviews an award of attorney fees for abuse of discretion.[28] "The party challenging the trial court's decision bears the burden of proving the trial court exercised its discretion in a way that was 'clearly untenable or manifestly unreasonable.'"[29]

Victor contends that the trial court "must use the lodestar method of determining an appropriate award of attorney fees."[30] However, in dissolution actions, the primary considerations for an award of attorney fees "are equitable," and thus, trial courts are not required to apply the lodestar method.[31]

"The overriding considerations are the need of the party requesting the fees, the ability to pay of the party against whom the fee is being requested, and the general equity of the fee given the disposition of the marital property."[32] Under RCW 26.09.140,

---

[26] Clerk's Papers at 82-83.

[27] Appellant's Br. at 36 (No. 71119-9-I).

[28] Estrada v. McNulty, 98 Wn. App. 717, 723, 988 P.2d 492 (1999).

[29] Crosetto, 82 Wn. App. at 563 (quoting In re Marriage of Knight, 75 Wn. App. 721, 729, 880 P.2d 71 (1994)).

[30] Appellant's Br. at 33 (No. 71119-9-I).

[31] Knight, 75 Wn. App. at 730.

[32] In re Marriage of Van Camp, 82 Wn. App. 339, 342, 918 P.2d 509 (1996).

[t]he court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

"In considering the financial resources of both parties, the court balances the needs of the requesting party against the other party's ability to pay."[33]

Here, the trial court found that Amber "testified and presented evidence that she was in need of attorney's fees, having incurred $93,213 . . . and having only been able to pay $21,073 of those fees."[34] It also found that Victor's "attorney fees had been paid in full since [the] inception of the case and those fees totaled more than $48,000."[35] Thus, the court concluded that Victor "has the ability to pay a portion of [Amber]'s attorney's fees" and that an award "in the amount of $50,000 is appropriate under the circumstances."[36] Victor fails to satisfy his burden of establishing that the court exercised its discretion in a way that was "clearly untenable or manifestly unreasonable." Accordingly, it was within the trial court's discretion to award Amber attorney fees.

Amber also requests attorney fees on appeal "based on her need and [Victor]'s ability to pay under RCW 26.09.140."[37] This court has the discretion to order a party to

---

[33] Leslie, 90 Wn. App. at 805.

[34] Clerk's Papers at 572 (No. 71119-9-I).

[35] Id.

[36] Id.

[37] Respondent's Br. at 35 (No. 71119-9-I).

pay the other party's attorney fees associated with the appeal of a dissolution action.[38]

"In exercising our discretion, we consider the arguable merit of the issues on appeal and the parties' financial resources."[39] Amber provided a declaration of financial need demonstrating her need for attorney fees, but Victor failed to timely file his own financial affidavit as required by RAP 18.1(c).[40] Accordingly, we award reasonable attorney fees for this appeal to Amber, provided she complies with RAP 18.1(d).

WE CONCUR:

---

[38] RCW 26.09.140.

[39] In re Marriage of C.M.C., 87 Wn. App. 84, 89, 940 P.2d 669 (1997).

[40] RAP 18.1(c) ([E]ach party must serve upon the other and file a financial affidavit no later than 10 days prior to the date the case is set for oral argument or consideration on the merits . . . . Any answer to an affidavit of financial need must be filed and served within 7 days after service of the affidavit.").

11