**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| JAMES W. CHERBERG AND NAN CHOT CHERBERG, | ) ) ) | No. 81482-6-I |
| | ) | DIVISION ONE |
| Respondents, | ) ) | |
| | ) | ORDER GRANTING |
| v. | ) | RESPONDENTS' MOTION |
| | ) | TO MODIFY OPINION AND |
| | ) | ORDER WITHDRAWING AND |
| HAL E. GRIFFITH and JOAN L. GRIFFITH, husband and wife, | ) ) | AND SUBSTITUTING OPINION |
| | ) | AND ORDER DENYING APPELLANTS' |
| Appellants. | ) | MOTION FOR RECONSIDERATION |
| | ) | |

Respondents James and Nan Chot Cherberg filed a motion to modify the court's opinion filed on August 16, 2021. Appellants Hal and Joan Griffith also moved to reconsider the court's August 16, 2021 opinion. The panel has determined that the respondents' motion to modify the opinion should be granted and that the opinion filed on August 16, 2021 shall be withdrawn and substituted with a new unpublished opinion. The panel has also determined that the appellants' motion for reconsideration is denied.

Now, therefore, it is hereby

ORDERED that the respondents' motion to modify the opinion is granted and that the opinion filed on August 16, 2021 shall be withdrawn and substituted with a new unpublished opinion. It is also

ORDERED that the appellants' motion for reconsideration is denied.

FOR THE COURT:

_Mann, C.J._

_Andrus, A.C.J._

_Dwyer, J._

FILED
9/20/2021
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| JAMES W. CHERBERG AND NAN CHOT CHERBERG, | ) ) ) | No. 81482-6-I |
| Respondents, | ) ) | |
| v. | ) ) | DIVISION ONE |
| HAL E. GRIFFITH and JOAN L. GRIFFITH, husband and wife, | ) ) ) | |
| Appellants. | ) ) ) | UNPUBLISHED OPINION |

MANN, C.J. — Hal and Joan Griffith appeal the trial court's findings of fact and conclusions of law following a bench trial arising from a dock dispute between the Griffiths and their neighbors, James and Nan Cherberg. The Griffiths argue that substantial evidence does not support the trial court's finding that the Griffiths agreed to the proposed dock or the finding that the Griffiths breached the purchase and sale agreement (PSA). The Griffiths also contend that the trial court erred in awarding specific performance, erred in awarding damages unreasonably incurred by the Cherbergs, and erred in its attorney fee award. We affirm.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

The Griffiths have lived on Mercer Island's northern shore since 1996.  In February 2012, the Griffiths purchased the next-door property from their neighbor Sandra Dunn.  Prior to purchasing the Dunn property, the Griffiths and Dunns shared the use of a dock that straddled their common property boundary under a joint dock agreement.  After buying the former Dunn property, the Griffiths burdened the property with two exclusive-use easements that benefitted the Griffiths' property: an easement securing the use of the existing dock and an easement securing the exclusive use of a small promontory between the two properties.

After recording the easements, the Griffiths listed the property for sale through real estate agent Kris Robb.  The listing specifically stated that it was a "no dock property."  Robb's former clients, the Cherbergs, expressed interest in buying the property.  The Cherbergs asked Robb to serve as a dual agent.  The Cherbergs wanted to build a small dock and would need the Griffiths' cooperation to do so.  Robb relayed to the Griffiths the Cherbergs' interest in building a small dock.  The Griffiths indicated that they would have no objection to a modest dock as long as it did not interfere with the use of their own dock.

On June 5, 2012, the Cherbergs submitted an offer through a PSA.  The next day, the Griffiths accepted the offer by countersigning the purchase and sale agreement, putting the property under contract pending inspection.  The signed purchase and sale agreement included an addendum providing in part:

> Sellers hereby agree to assist Buyers in their effort to obtain a dock permit.  They agree not to challenge in any way the Buyers solicitation of said permit.

Sellers hereby agree to allow Buyers to encroach into the normal 35 foot setback between docks to no closer than 25 feet.[1] This may entail changing the easement which is in place regarding the landscape on the Western most property along the waterfront. Sellers agree to cooperate with Buyers in order to obtain a permit for a dock along the Western line of the property.

On June 6, the same day that the parties executed the purchase and sale agreement, the Cherbergs' dock contractor, Ted Burns, e-mailed the Cherbergs to inform them that they would need to enter into a joint use agreement (JUA) with the Griffiths in order to build a dock:

[T]he Joint Use Agreement with the [Griffiths] should allow us to be within 20' of their existing dock, and it would be even better if we could be within 15'. In addition, it should address either the removal of the [existing floating dock] or the ability to locate within 5' of the floats.

Burns's e-mail included a sketch of the proposed dock (New Dock Sketch), a plot showing the lot lines, and a blank form JUA from the City of Mercer Island.

On June 13, 2012, the Cherbergs sent the Griffiths a new proposed addendum. The June 6 e-mail from Burns to Cherberg accompanied the addendum, including the plot showing the property lines, the New Dock Sketch, and the blank form JUA. The copy of Burns's e-mail that the Griffiths received was annotated by Robb with the words, "This is a general proposal but is not binding but nothing will happen but to code."

On June 23, 2012, the parties agreed to and finalized the second addendum, which provided in part:

Seller acknowledges receipt of the NEW DOCK email copy from Ted Burns outlining the proposed dock Buyer intends to pursue. Seller further acknowledges the receipt of a copy of the lateral lines plot from King County Records and the proposed Dock sketch.

---

[1] The Griffiths struck this language before signing.

-3-

> ~~Seller agrees to remove the floating dock at such time as the Buyer asks for it to be removed but not prior to that time and cooperate with Buyer and the piling company to pursue a permit in order to obtain the dock.~~[2] Seller further agrees to sign a Joint Use Agreement as attached which will allow the Buyer to place the proposed dock within the 35 foot setback usually required.

The PSA closed on June 29, 2012. The parties did not execute a JUA at closing.

Over the next six months, the Cherbergs and Griffiths continued to discuss the size and location of the Cherbergs' proposed dock without reaching agreement. On January 11, 2013, the Cherbergs' attorney, Charlie Klinge, e-mailed the Griffiths' attorney, Shannon Sperry, with an update:

> Dock: The dock issues are complex which is typical due to the multiple agencies and regulations involved, and of course the narrow site is challenging. I talked to Jim [Cherberg] about getting a final dock layout that Griffith can review and then make comments on and/or approve. Jim has been going through various options with the dock designer to balance all the issues: personal desires, neighbors, and agencies. It seemed to me that Jim needed to come to conclusions and then present that to the Griffiths. So, that will take a bit more time. I think we should let Jim focus on finalizing a dock plan. Once Cherberg and Griffith are agreed on the dock location, then we can look at the Joint Use Agreement, etc.

On January 21, James Cherberg wrote to the Griffiths to update them about the status of the dock's design:

> I have asked [the dock builder] Seaborn to provide a detailed scaled drawing of this location and access to the dock and its acceptability to you. In this location it would still be necessary, however, to meet Mercer Island's Joint Agreement Use (on both sides of the dock). I have Cc'cd this e-mail to my attorney to keep him in the loop, as you have requested Shannon Sperry review M.I.'s Agreement with him after we've agreed on the dock location and access.

---

[2] The Griffiths struck this language before signing.

In April 2013, the Cherbergs applied for a permit with the U.S. Army Corps of Engineers (Corps) to build a dock, install two ground-based boatlifts, and plant native shoreline vegetation.[3]  The proposed dock drawing submitted to the Corps was similar to the sketch provided to the Griffiths with the second addendum, but was larger and approximately 5 feet closer to the Griffiths' dock.

In January 2014, the Corps questioned the size and proximity of the proposed dock to the Griffiths' dock and resulting interference with the Griffiths' use of their dock:

> It appears that the Griffiths['] pier north of the project is on the Cherberg property, as you stated.  It seems that 18.5 feet would be insufficient room for the Griffith family to use their pier, especially since a large pier like that could accommodate a larger vessel.

On January 29, Burns replied that "[t]he Proposed pier location was discussed with the Griffiths as part of purchasing the property and they agreed with the location."

In May 2014, the Corps again asked about the proximity: "Does Mr. Griffith have any objections to the proposed pier?"  Burns forwarded this question along to James Cherberg and asked him for "the wording you'd like me to use in responding to [the Corps]."  Cherberg responded, "Like we talked before, this language to [the Corps] is fine: 'Mr. Cherberg intends to construct [a] dock included in the Purchase and Sale Agreement between himself and [Griffith].'"  In July 2014, the Corps issued the permit.

In November 2014, the Cherbergs' attorney sent a demand letter for the execution of a joint use agreement.  The demand letter included a proposed joint use agreement and a copy of the new dock design submitted to the Corps and City of Mercer Island.  The Griffiths refused to sign the proposed joint use agreement.  Instead,

---

[3] Proposals to construct new docks are subject to review by the Corps as well as the City of Mercer Island.  The Corps reviews proposed docks for, among other factors, their impact on navigability and feasibility of vessels to approach and tie up to existing docks.

the Griffiths proposed the Cherbergs build a smaller dock with greater separation from their own dock. The Cherbergs rejected the Griffiths' proposed dock.

The Cherbergs filed suit in May 2015, seeking specific performance to compel the Griffiths to sign the joint use agreement. Following discovery and briefing, in April 2016 the trial court granted the Cherbergs' motion for summary judgment, finding that the Griffiths had breached the PSA. The trial court then denied the Griffiths' motion for reconsideration and granted the Cherbergs' motion for specific performance. The Griffiths appealed. We reversed the order granting the Cherbergs' motion for summary judgment and ordering specific performance, and remanded for trial.[4]

Following a bench trial, the court concluded that the Griffiths agreed to the New Dock Sketch design provided by Burns. The court also found that the Griffiths breached the PSA. The court awarded $121,346.10 in damages to the Cherbergs. The court also awarded the Cherbergs $502,935.00 in attorney fees and $27,739.90 in costs. The Griffiths appeal.

## ANALYSIS

Following a bench trial, we review whether the findings of fact are supported by substantial evidence and whether those findings support the conclusions of law. Pub. Util. Dist. No. 2 of Pacific County. v. Comcast of Wash., 184 Wn. App. 24, 48, 336 P.3d 65 (2014). Substantial evidence means sufficient evidence sufficient to persuade a rational, fair-minded person that the premise is true. Pub Util. Dist., 184 Wn. App. at 48.

---

[4] Cherberg v. Griffith, No. 75276-6-I (Wash. Ct. App. Nov. 20, 2017) (unpublished), https://www.courts.wa.gov/opinions/pdf/752766.pdf.

Unchallenged findings of fact are verities on appeal.  State v. O'Neill, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

We review the evidence in the light most favorable to the prevailing party and this court defers to the trier of fact on questions of witness credibility or conflicting testimony. Weyerhaeuser v. Tacoma-Pierce County Health Dep't, 123 Wn. App. 59, 65, 96 P.3d 460 (2004).  "The trial court's determination on conflicting evidence is decisive, and this court cannot substitute its judgment for that of the trial court, even if we were of the opinion that the factual dispute should have been resolved the other way."  Du Pont v. Dep't of Lab. & Indus., 46 Wn. App. 471, 479, 730 P.2d 1345 (1986).

A. Substantial Evidence — New Dock Sketch

The Griffiths challenge the trial court's determination that they agreed to the New Dock Sketch, arguing that substantial evidence does not support findings 1.63, 1.66, and 1.68.  We disagree.

The trial court found:

> 1.63 The second addendum uses the word "proposed" three times: "Seller acknowledges receipt of the New Dock email copy from Ted Burns outlining the proposed dock"; Seller further acknowledges the receipt of a copy of the lateral lines plot from King County records and the proposed dock sketch"; "Seller further agrees to sign a Joint Use Agreement as attached which will allow the Buyer to place the proposed dock within the 35-foot setback usually required."
>
> . . . .
>
> 1.65 . . . There are four, separate clauses in the written, signed, second addendum, say that this is the dock that is being proposed and this is the dock that the buyer intends to pursue.
>
> 1.66 The proposed dock agreement is fully defined: This dock is 21 feet from the Griffiths' dock at the closest point, it is 75 over the water, and it has a U-shape at the end.

> 1.67 The PSA was voluntarily signed by all parties; the Griffiths cannot now claim they did not read it or were ignorant of its contents.
>
> 1.68 By signing the second addendum, acknowledging receipt of the proposed dock and the details related to the dock, the parties understood the proposal and agreed that the terms of the PSA would apply to the proposal.

When reviewing contracts on appeal, "[t]he touchstone of contract interpretation is the parties' intent." Tanner Elec. Co-op. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996). Washington follows the "objective manifestation theory" of contract interpretation. Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712-13, 334 P.3d 116 (2014). We give "words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Viking Bank, 183 Wn. App. at 713.

We also apply the "context rule" from Berg v. Hudesman, 115 Wn.2d 657, 669, 801 P.2d 222 (1990) to determine the parties' intent. This rule allows the court to consider the context surrounding the execution of the contract, including the consideration of extrinsic evidence. Viking Bank, 183 Wn. App. at 713. "The court may consider (1) the subject matter and objective of the contract, (2) the circumstances surrounding the making of the contract, (3) the subsequent conduct of the parties to the contract, (4) the reasonableness of the parties' respective interpretations, (5) statements made by the parties in preliminary negotiations, (6) usages of trade, and (7) the course of dealing between the parties." Spectrum Glass Co., Inc. v. Pub. Util. Dist. No. 1 of Snohomish County, 129 Wn. App. 303, 311, 119 P.3d 854 (2005).

When interpreting the contract between the Cherbergs and the Griffiths, the court followed the context rule from Berg to consider the parties' intent, concluding that the Griffiths agreed not to object to the proposed dock as indicated in the two addendums and the New Dock e-mail and sketch. The court relied on the PSA, the first addendum, the second signed addendum, and the e-mails between the parties. Both the Cherbergs and Griffiths testified at trial about the execution of the second addendum, and the court found the Cherbergs' versions of events more credible. The court concluded that all of the negotiations between the Cherbergs and Griffiths were not attempts to define an undefined agreement, but rather attempts by the Cherbergs to enforce the agreement.

Ultimately, the court's decisions about the intent of the parties was a credibility determination that we will not disturb on appeal. The Griffiths agreed to allow the Cherbergs to build a dock, and the two parties negotiated the terms of that contract before signing the second addendum, including a plan for the parameters of the dock.

Further, the unchallenged findings of fact support the trial court's conclusions that the Griffiths agreed to assist, cooperate with, and not challenge a final version of the New Dock Sketch, for a dock within the 35-foot setback and near the westernmost property line, which may require alteration of the easement. No evidence suggests that the parties needed a fully engineered drawing of the proposed dock to execute the PSA. When we consider the evidence in the light most favorable to the Cherbergs, there is substantial evidence to support the finding that the Griffiths agreed to the proposed dock.

B.  Substantial Evidence — Breach of PSA

The Griffiths next argue that substantial evidence does not support the court's finding that they breached the PSA.  We disagree.

The court found:

> 1.80 When the appropriate request was made, the specific language in the PSA is that "we will not object" and "we will agree," and the Griffiths did not comply with that promise.  As such, any objection to the dock ultimately proposed to the City (Exhibit 421), was a breach because this proposal was fully consistent with the New Dock email and sketch.
>
> 1.81 The dock the Cherbergs proposed to the City (Exhibit 431) is fairly close to the New Dock email and sketch; it is 66 feet or less over water, which is shorter than agreed to in the PSA as acknowledged by receipt of the New Dock email and sketch, and further away from the Griffiths' dock than the New Dock email and sketch.  In sum it is better for the Griffiths than the dock in the New Dock email and sketch, yet they still objected to it.

Based on its findings, the court concluded:

> 2.8 The Griffiths' did not breach the PSA by their initial objection to the Corps, because the dock permitted by the Corps is different than, and not as favorable to, the Griffiths as the proposed dock in the New Dock email and sketch.
>
> 2.9 The Griffiths did breach the PSA beginning on April 23, 2015, by objecting to the dock proposed to the City (Exhibit 431; Exhibit 446) as it is 66 feet or less over water, shorter than agreed to in the New Dock email and sketch, and further away from the Griffiths' dock than the New Dock email and sketch.
>
> 2.10 On July 27, 2015, the Griffiths breached the PSA by Rich Hill, the Griffiths' attorney, writing to the City to reiterate the Griffiths' objections to the proposed dock and their unwillingness to sign the JUA.

The Griffiths contend that they cannot be liable for breach of contract, because the Cherbergs first breached the contact by pursuing permits for a dock that was bigger than the New Dock Sketch.

-10-

Contracts have an implied covenant of good faith and fair dealing which requires each party to fully cooperate with the other so that each party may obtain the full benefit of the performance. Metro. Park Dist. of Tacoma v. Griffith, 106 Wn.2d 425, 437, 723 P.2d 1093 (1986). The Griffiths' argument that the Cherbergs acted in bad faith, thus predating their own breach, is without merit. Testimony on both sides supports the Cherbergs' good faith belief that the New Dock Sketch and the dock that the Cherbergs presented to the Corps were similar.[5]

The Griffiths contend that they acted in good faith by proposing dock designs that fell within the criteria agreed upon by the parties. This agreement centers on their contention that there was no agreement on the specific dock. As discussed above, however, there is substantial evidence to support the trial court's findings. Because the trial court found that the New Dock Sketch was agreed upon by the parties, the Griffiths' continued objection to the City over the Cherbergs' proposed dock, and the Griffiths' continued refusal to sign the JUA, provide substantial evidence to support the trial court's finding of breach.

C. Specific Performance

The Griffiths argue that the court erred by awarding specific performance. We disagree.

The trial court found that:

---

[5] Hal Griffith stated, "They're very similar in most regards." A professional engineer, Jeffrey Layton, retained by the Cherbergs' attorneys testified as follows:

> [PLAINTIFF'S ATTORNEY]: So the dock that was permitted by the Corps is actually virtually identically long to the Ted Burns PSA dock; is that right?
> [LAYTON]: Yes, I agree with that.
> [PLAINTIFF'S ATTORNEY]: Not virtually, it is?
> [LAYTON]: It is. It's the same.

> 2.15 The Cherbergs are not entitled to have a dock pursuant to the PSA. They are entitled to have the Griffiths support the proposed dock in the New Dock email and sketch, to refrain from obstructing the permitting process and building of the dock, and to sign the JUA.

The court ordered specific performance consistent with this finding:

> 2.19 The Griffiths shall sign the JUA and are ordered not to object to any dock that is no closer to their property line than agreed to in the New Dock email sketch, and no closer to the Griffiths' dock at any point than agreed to in the New Dock email sketch, and no closer to any part of the ELL at the end of their dock than agreed to in the New Dock email sketch.

> 2.20 The Griffiths are also ordered to agree to modification of the easement as necessary to accommodate the Cherbergs' dock within the exclusive landscape easement area as stated in the first addendum and in accordance with the "New Dock" email and sketch and the terms of these findings.

When a party seeks specific performance of a contract, rather than damages, a higher standard of proof must be met: "clear and unequivocal evidence that leaves no doubt as to the terms, character, and existence of the contract." Kruse v. Hemp, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993). "Specific performance is a proper remedy only if a valid contract exists, a party has or is threatening to breach the contract, the terms of the contract are clear, and the contract is not the product of fraud or unfairness." Pardee v. Jolly, 163 Wn.2d 558, 569, 182 P.3d 967 (2008).

If a court cannot adequately compensate a party's loss with monetary damages, then a court may use its broad equitable powers to compel a party to specifically perform its promise. Crafts v. Pitts, 161 Wn.2d 16, 23-24, 162 P.3d 382 (2007). Within these equitable powers, the court can order a party to convey a unique parcel of land. Pitts, 161 Wn.2d at 25.

The court found that the Griffiths agreed to assist with and not challenge the New Dock Sketch, and that the dock is specifically defined. Substantial evidence supports

these terms of the contract. Specific performance is the logical way to enforce the terms of the PSA. The area for a potential dock is unique to the Cherbergs, as they purchased the property with the specific intention of building a dock on that property. Monetary damages cannot remedy the Cherbergs, only the pursuit of their dock can.

As the court correctly found, the PSA does not guarantee the Cherbergs a dock. The dock is ultimately subject to permitting requirements. Rather, the terms of the agreement require the Griffiths to support the proposed dock, not to challenge the permitting process, modify the easement as needed, and to sign the JUA. Therefore, the trial court properly ordered specific performance.

### D. Damages

The Griffiths next contend that the trial court erred by awarding damages as they were unreasonably incurred by the Cherbergs. We disagree.

After the Griffiths refused to sign the JUA on April 23, 2015, the Cherbergs attempted to permit a dock through a new Mercer Island law that repealed the requirement of a JUA but only allowed one noncommercial, resident dock per residential waterfront lot. MICC 19.07.110(E)(4). Mercer Island, the Shoreline Hearings Board, and the King County Superior Court rejected the proposed permit. The Griffiths challenged the permit in each venue.

The trial court awarded the Cherbergs damages for their efforts to obtain permitting after the Griffiths breached the JUA on April 23, 2015. This included an award to the Cherbergs: $87,866.30 for their attorney, Charles Klinge's, assistance in seeking and then appealing the decisions denying the permit; $28,127.00 for Jeffrey Layton's expert engineering services; $1,366.00 for Scott Holsapple's landscape

architecture fees; and $3,986.75 for Triad Engineering's engineering surveying fees. The total damages award was $121,346.10. The court awarded the damages under the prevailing party fees clause, and under the theory of equitable indemnity.

The Griffiths argue that this award was unreasonable because the pursuit of this permit was futile under the City of Mercer Island's new law. The Griffiths also contend that the $87,866.30 awarded to the Cherbergs for their land use attorney was improper. They rely on Maytown Sand & Gravel, LLC v. Thurston County, 191 Wn.2d 392, 437, 423 P.3d 223 (2018) (attorney fees not available as damages absent a contract, statute, or recognized ground in equity), abrogated on other grounds by Yim v. City of Seattle, 194 Wn.2d 682, 451 P.3d 694 (2019).

We review de novo the question of whether damages were proper for the cause of action. Bill & Melinda Gates Found. v. Pierce, 15 Wn. App. 2d 419, 436, 475 P.3d 1011 (2021). We review the reasonableness of a damage award for an abuse of discretion. Aecon Bldgs. Inc. v. Vandermolen Constr. Co., 155 Wn. App. 733, 742, 230 P.3d 594 (2009).

### 1.  Basis for Damages

While the trial court relies on the PSA as a basis for damages, we disagree. The PSA provides "if Buyer or Seller institutes suit against the other concerning this Agreement the prevailing party is entitled to reasonable attorney's fees and expenses." This provision, relied on by the trial court, does not support the award of damages. The Cherbergs sought alternative permitting through the new statute, which did not relate to the parties' agreement in the PSA. Further, these damages awarded were not attorney fees and expenses.

-14-

Alternatively, the trial court awarded damages under the theory of equitable indemnity. When the natural and proximate consequences of a wrongful act of a defendant involve the plaintiff in litigation with others, there may be a recovery of damages for reasonable expenses incurred in the litigation, including attorney fees. Manning v. Loidhamer, 13 Wn. App. 766, 769, 538 P.2d 136 (1975). This theory of indemnification requires that "the original suit generating the expenses must be instituted by a third party not connected with the original transaction." Loidhamer, 13 Wn. App. at 769. To create liability, three elements are necessary: (1) a wrongful act or omission by A toward B; (2) the act or omission exposes or involves B in litigation with C; and (3) C was not connected with the initial transaction or event. Loidhamer, 13 Wn. App. at 769. Because the Cherbergs themselves initiated the permitting processes, the doctrine of equitable indemnification does not apply.[6]

The Cherbergs contend that equitable principles support their award of damages. "Generally, the measure of damages for breach of contract is that the injured party is entitled to recovery of all damages naturally accruing from the breach, and to be put in

---

[6] In Wharf Rest., Inc. v. Port of Seattle, 24 Wn. App. 601, 614, 605 P.2d 334 (1979), a restaurant sued the Port of Seattle when the Port leased its premises to another operator after the restaurant failed to timely exercise its option to renew its lease. The restaurant commenced and prevailed in an action against the Port and its new lease, but the court did not award the restaurant fees based on equitable indemnity:

> The Wharf does, however, cite our decision in Manning v. Loidhamer, 13 Wn. App. 766, 538 P.2d 136 (1975) in support of its argument that it is entitled to attorneys' fees and actual costs because it was the Port's refusal to negotiate with it or to renew the Wharf's old lease that caused the Wharf to become embroiled in litigation with The Wharfside Companies. In Wilber v. Western Properties, 22 Wn. App. 458, 467, 589 P.2d 1273, (1979), we held: "(a)s we made clear in Manning v. Loidhamer, Supra, in order to recover attorneys' fees and . . . costs, the suit generating them must be instituted by a third party unconnected with the transaction." That was not the situation here. It was the Wharf itself, and not a third party that instituted the present action. The Wharf is not entitled to recover actual costs and attorneys' fees.

Wharf Rest., Inc., 24 Wn. App. at 614.

as good a position as he would have been in had the contract been performed.  Nw. Land & Inv., Inc. v. New W. Fed. Sav. & Loan Ass'n, 57 Wn. App. 32, 43, 786 P.2d 324 (1990).  The trial court has broad discretion in fashioning equitable relief, which includes awarding consequential damages in addition to specific performance.  Cornish Coll. of the Arts v. 1000 Virginia Ltd. P'ship, 158 Wn. App. 203, 230, 242 P.3d 1 (2010).  "Consequential damages awarded in addition to specific performance are not awarded for breach of the contract.  Rather, they are awarded at the equitable discretion of the trial court in an attempt to make the nonbreaching party whole."  Cornish Coll. of the Arts, 158 Wn. App. at 228.[7]

The damages from the Cherbergs' pursuit of an alternative permitting process naturally occurred from the breach.  After the Griffiths continually challenged the Cherbergs' attempts to obtain a dock pursuant to the signed PSA, the Cherbergs found a new potential avenue to obtain a dock permit without the Griffiths' ability to interfere.  Jim Cherberg attended a Mercer Island City Council meeting to obtain clarification of how the new permitting rules would be applied.  Based on questioning by a councilman who was aware of complications with particular docking circumstances on Mercer Island, and because the Cherbergs were unable to use the dock on their property due to the exclusive landscape easement, the Cherbergs had a good faith belief that they could obtain a permit under the new code.

But for the Griffiths' breach of the PSA, the Cherbergs would not have had to pursue the alternative permitting.  If the Cherbergs had been granted the new permit,

---

[7] See also Rekhi v. Olason, 28 Wn. App. 751, 757, 626 P.2d 513 (1981) ("The damages are not awarded for breach of contract, but are awarded so that the purchaser, unable to have exact performance because of the delay, may have an accounting of any losses caused by the delay, so that he can be restored as nearly as possible to the position he would have been in had the seller performed.").

they would not have sought specific performance of the PSA.  The Griffiths challenged the Cherbergs through both avenues.  To put the Cherbergs in the position had the breach not occurred, both specific performance and damages were necessary to ensure that the Cherbergs could apply for the agreed-upon dock, and to compensate them for their previous attempts to permit that dock.  The court's broad equitable discretion to award those damages, including the cost of the Cherbergs' attorney, form an appropriate basis for damages.

## 2.  Reasonableness of Award

The damages awarded to the Cherbergs were also reasonable.  The Cherbergs provided stipulated exhibits of the invoices of their land use attorney, their engineer, their architect, and their surveyor.  The court determined that the Griffiths' first breach—April 23, 2015—was the trigger for the award, and thus limited the damages to those incurred after the trigger.  Because there was a legal basis for awarding damages, and because the Griffiths cannot prove an abuse of the court's discretion in awarding damages, we affirm the damages award.

### E.  Attorney Fees Award

The Griffiths argue that the court erred by awarding the Cherbergs attorney fees based on the prevailing party theory.  We apply a two-part standard of review to a trial court's award of attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion."  Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).  We will not award attorney fees as part of the cost of

litigation in absence of a contract, statute, or recognized ground of equity. Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

The Cherbergs originally brought causes of action for quiet title, ejectment, breach of contract, and negligent misrepresentation. The court dismissed the negligent misrepresentation claim on summary judgment. After the court granted the Cherbergs' motion for summary judgment in 2016, the parties agreed to dismiss the balance of the claims.

In addition to the damages awarded, the trial court also awarded the Cherbergs reasonable attorney fees. In their motion for prevailing party fees, the Cherbergs argued that the dismissal of any claims before trial does not entitle the Griffiths to a proportionality offset, and that the allegations and evidence were integral to trial. The Cherbergs requested: $507,980.15 for Frey Buck's attorney fees; $140,942.25 for Klinge's attorney fees, and $27,739.90 in costs. The Griffiths opposed the fee award, contending that the Cherbergs did not segregate the recoverable fees from those incurred in prosecuting the dismissed claims.

The trial court conducted a lodestar[8] analysis and found the Cherbergs' attorney hourly rates were reasonable. The trial court awarded the Cherbergs: Frey Buck's attorney fees of $487,522.00; Klinge's attorney fees of $15,413.00,[9] and costs of $27,739.90 as "reasonable and necessary and directly related to the Cherbergs' efforts

---

[8] The court determines reasonable attorney fees by calculation of the "'lodestar,' which is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 224 Westlake, LLC v. Engstrom Properties, LLC, 169 Wn. App. 700, 734, 281 P.3d 693 (2012).
[9] The court noted that these fees awarded to Klinge had not been previously awarded as damages.

-18-

to overcome the Griffiths' breach of contract." In sum, the court awarded $502,935.00 in attorney fees and $27,739.90 in costs.

The PSA provides for attorney fees and costs to the prevailing party. The prevailing party is the one who receives judgment in that party's favor. Blair v. Washington State Univ., 108 Wn.2d 558, 571, 740 P.2d 1379 (1987). If attorney fees are recoverable for only a portion of the party's claims, "the award must properly reflect a segregation of the time spent on issues for which fees are authorized from time spent on other issues." Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.), 119 Wn. App. 665, 690, 82 P.3d 1199 (2004). An exception is available if no reasonable segregation can be made. Loeffelholz, 119 Wn. App. at 691. If "the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees." Loeffelholz, 119 Wn. App. at 691.

The Griffiths' claim that the Cherbergs were not entitled to fees is without merit. Although the court did dismiss the negligent misrepresentation claim on summary judgment, the actual dispute between the parties was resolved in the breach of contract claim. The Cherbergs prevailed on that claim and, under the PSA, are entitled to prevailing party fees.

The trial court "must supply findings of fact and conclusions of law sufficient to permit a reviewing court to determine why the trial court awarded the amount in question." SentinelC3, Inc., 181 Wn.2d 127, 144, 331 P.3d 40 (2014). Although the court trial did not enter detailed findings of fact outlining its calculation of the fee award, the court did not abuse its discretion in the amount of attorney fees awarded. The

Cherbergs provided extensive evidence to support their motion for fees, and the court clearly considered what amount was appropriate, ultimately awarding the Cherbergs less fees than requested and reducing Klinge's fees based on the damage award.[10]

Affirmed.

_Mann, C.J._

WE CONCUR:

_Andrus, A.C.J._          _Dwyer, J._

---

[10] Both parties request attorney fees on appeal.  Pursuant to the prevailing party provision of the PSA, the prevailing party is entitled to reasonable attorney fees and costs on appeal.  We award reasonable attorney fees and costs on appeal to the Cherbergs subject to their compliance with RAP 18.1(d).